**Raymond GHANT, Appellant,**

**v.**

**Otis BOWEN, Secretary of Health and Human Services, Appellee.**

**No. 90–5179.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 14, 1990.

Decided April 16, 1991.

Philip G. Lind, Minneapolis, Minn., for appellant.

Gary A. Sultz, Chicago, for appellee.

Before LAY, Chief Judge, JOHN R. GIBSON and WOLLMAN, Circuit Judges.

LAY, Chief Judge.

The Secretary of Health and Human Services ("Secretary") denied Raymond Ghant's claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423 (1989). Upon review, the district court accepted the magistrate's recommendation to deny benefits and affirmed. We reverse and remand for determination of benefits.

Ghant began receiving supplemental security income benefits in January, 1974, when the federal supplemental security income program became effective.[1] He continued to receive supplemental security income benefits until September, 1983, when his benefits were terminated.[2]

On September 19, 1983, Ghant filed an application for disability benefits, alleging he had been disabled since September, 1977 due to a lung condition. The Secretary initially denied Ghant's application because Ghant failed to establish that the earnings reported under two social security numbers belonged to him. The district court reversed and remanded Ghant's claim for determination of benefits.

On June 25, 1986, Ghant filed a second application for supplemental security income benefits. Ghant received a hearing before Administrative Law Judge ("ALJ") Alfred H. Varga on March 26, 1987. ALJ Varga denied Ghant's application for supplemental security income benefits on November 7, 1987.

On February 25 and July 27, 1988, ALJ Robert C. Cordek held hearings on Ghant's disability benefits claim which had been remanded to the Secretary. In September, 1988, ALJ Cordek issued a decision in which he concluded that Ghant was disabled from September, 1977 through August 31, 1983, on the basis of collateral estoppel. He also found that Ghant was disabled from September 1, 1983 through at least June 24, 1986.

The Appeals Council concluded after reviewing both ALJ decisions that Ghant was not entitled to either disability benefits or supplemental security income benefits and the district court affirmed. Ghant now appeals.

I. Background

Ghant was born on July 22, 1937. He is 5'11" tall. In March, 1987, Ghant weighed 235 pounds. It is unclear from Ghant's testimony whether Ghant has a third or an eighth grade education.[3] Ghant has testified that he can read but not write.

Ghant has worked as a machine operator, a machinist and a heater and has worked in a foundry. He has not engaged in substantial gainful employment since September, 1977. Ghant last worked as a spot welder for six weeks in 1982. He testified that he

---

1. Ghant was converted from Aid for the Disabled, a state program, to the supplemental security income program. *See* 42 U.S.C. § 1382c(a)(3)(E) (1989).

2. Ghant's supplemental security income benefits were terminated when the Social Security Administration determined that Ghant's income

exceeded supplemental security income limits. *See* 42 U.S.C. § 1382(a) (1989).

3. On September 26, 1984, Ghant testified that he completed the eighth grade. App. I at 48. However, on February 25, 1988, Ghant indicated that he had a third grade education. App. II at 493.

stopped working as a welder primarily because of the excessive fumes. App. II at 505–06.

Ghant has admitted filing two social security applications. App. I at 100. He claims he filed the second application to help him get a job. App. I at 105. Ghant claims he did not believe he could obtain a decent job because of his prison record. The record indicates that Ghant was incarcerated from July 20, 1966, to January 10, 1968, for armed robbery. App. I at 105, 369. Ghant also has admitted using two social security numbers on occasion. App. I at 107.

Ghant alleges he suffers from headaches, emphysema, a nervous stomach, depression, lung disease, dizziness, irritability, breathing problems, and abdominal, back, neck, chest and leg pain. He also claims he has difficulty sleeping and that he has a hard time dealing with stress. Ghant has a long medical history which began in 1973, when he underwent surgery for emphysematous blebs on his lungs. Ghant later was diagnosed as having lung disease and received periodic treatment.

In 1985, Ghant was examined by Sherman Nelson, Ph.D., in connection with his claims for benefits. Dr. Nelson performed a personality test which showed that Ghant suffered from mild neurotic depression with psychosomatic tendencies, rigid defensiveness and mild irritability and resentment. App. II at 962. He described Ghant as dull-normal intelligence and concluded that he was functionally literate. App. II at 962.

The following year, Azam Ansari, M.D., examined Ghant for the Social Security Administration and concluded that Ghant suffered from exogenous obesity, low back pain, anxiety, depression, and lung disease. App. II at 833.

Thomas H. Johnson, M.D., Ghant's treating physician since 1973, stated in 1986 that Ghant had become totally and permanently disabled for gainful employment by 1977. App. II at 815. At that time, Dr. Johnson diagnosed Ghant as having a chronic myofascial neck injury, moderately severe emphysema, a chronic myofascial lumbosacral injury with a protruding lumbar disk, an inguinal hernia on the left, and degenerative arthritis of both knees. App. II at 816. He stated that Ghant appeared to be in pain. App. II at 815. He found that Ghant could not walk more than one block without having to rest, that he could lift ten pounds continuously, fifteen pounds frequently and twenty pounds occasionally, that he could not stand changes in temperature, that he could not work in a stooped position, that he could not climb stairs or work with his hands above his head, that he could sit, stand, and walk only a fraction of an hour, and that he could not work in dust, fumes or smoke. App. II at 816.

James Hammersten, M.D., testified as a medical advisor at the hearing before ALJ Cordek that Ghant's impairments did not meet or equal any listed impairment.[4] App. II at 533. He believed Ghant could perform light work in an environment free of smoke, dust and fumes if he changed positions approximately every two hours, did not frequently bend or lift from the floor, did not work around heights, and did not work at a job at which he would be bruised. App. II at 534, 536, 537.

Laurence M. Greenberg, M.D., a board certified psychiatrist, testified as a medical expert at the second hearing before ALJ Cordek that Ghant had no medically determinable mental impairment. App. II at 621, 634. He stated, however, "I have no doubt that ... [Ghant has] a significant degree of chronic pain." App. II at 637.

On September 9, 1985, Ghant told an examining psychiatrist that he cooks, cleans, washes dishes, drives, and fishes from the shore. He also stated that he sometimes walks up to three or four miles at one time, but that his walking is often curtailed because his back "gives out." App. II at 961. Approximately one year later, Ghant told a different examiner that he dresses and grooms himself, drives, cooks, grocery shops, attends church, plays

---

**4.** The listing describes impairments which are considered severe enough to prevent an individual from performing any gainful activity. 20 C.F.R. §§ 404.1525(a), 416.925(a) (1990).

dominos and cards, and fishes off a pontoon boat. App. II at 838. He stated, however, that he does not work in the yard, dust, vacuum or do laundry or the dishes. App. II at 838.

Mary Harris and Avis Peterson testified as vocational experts before ALJ Cordek. Both experts were asked whether a hypothetical person of Ghant's age, education, and work history, who was restricted to performing unskilled light work in an environment free of excessive smoke, dust and fumes, who needed to change positions every two hours, who could not bend frequently or sit, stand or walk for more than two hours at a time, who could not work in an environment where he would be easily bruised, who had a short fuse and a tendency to complain, and who was unable to work closely with others, could perform any of Ghant's past jobs or any other work that exists in significant number in the economy. Harris and Peterson agreed that the hypothetical person could not perform any of Ghant's past jobs. App. II at 551, 669. They also agreed that the person could perform small part assembly jobs. App. II at 643, 669. The experts, however, disagreed as to the incidence of these jobs in the national economy. Harris stated that the hypothetical person could perform between 1000 to 2000 small part assembly jobs available in the state of Minnesota; Peterson, on the other hand, stated that the person could perform approximately 300 to 500 small part assembly jobs. App. II at 645, 672–73. Harris also stated that Ghant could perform between 700 to 800 parking attendant jobs available in the state of Minnesota. App. II at 645.

On November 7, 1987, ALJ Varga found Ghant ineligible for supplemental security income benefits. He specifically found that Ghant had the residual functional capacity to perform light work in an environment free of smoke, dust, and fumes, and that he could perform a significant number of jobs in the national economy notwithstanding his health limitations. ALJ Varga also concluded that Ghant's complaints of pain and fatigue were not credible because Ghant had used two social security numbers, had a spotty work record, took very little pain medication, and had made several inconsistent statements when he described his daily activities and his work record.

ALJ Cordek found Ghant disabled from September, 1977, the time Ghant allegedly became disabled, through August 31, 1983, the last month that Ghant received benefits, on the basis of collateral estoppel.[5] ALJ Cordek also found Ghant could perform unskilled light work that does not require bending, sitting, standing, or walking for more than two hours at a time, that would accommodate his irritability and his tendency to complain, that would not subject him to dust, fumes or smoke, and that could be performed in an environment where he would not be easily bruised. He concluded Ghant was disabled from September 1, 1983, through June 24, 1986, because Ghant could not perform a significant number of jobs in the national economy.[6] ALJ Cordek also found that Ghant's complaints of chest, back, and leg pain, shortness of breath, coughing, and difficulty handling stress were credible and supported by objective medical evidence.

On July 6, 1989, the Appeals Council reviewed both ALJ Varga's decision and ALJ Cordek's decision to determine whether Ghant was entitled to either disability benefits or supplemental security income benefits. The Appeals Council specifically rejected ALJ Cordek's conclusion that Ghant was disabled through August 31, 1983, under the collateral estoppel doc-

---

5. ALJ Cordek found that Ghant's conversion to the federal supplemental security income program from a state program in January, 1974 constituted a determination of disability under the federal program. He then concluded that collateral estoppel barred redetermination of the issue of Ghant's disability.

6. Ghant filed an application for supplemental security income benefits on June 25, 1986. ALJ Cordek did not address whether Ghant was disabled during the period covered by Ghant's application for supplemental security income benefits. Under the regulations, Ghant could not receive supplemental security income benefits for any months *before* he filed an application. 20 C.F.R. § 416.335 (1990).

trine.[7] The Appeals Council found Ghant had the residual functional capacity to perform light work in an environment free of dust, smoke, and fumes and that Ghant did not have a medically determinable mental impairment that would limit his ability to perform mental or emotional work-related functions. The Appeals Council agreed with ALJ Varga that Ghant's complaints of disabling pain were not credible. The district court granted summary judgment in favor of the Secretary, and this appeal followed.

## II. Discussion

### A. Standard of Review

We review the Secretary's decision denying Ghant disability insurance benefits to determine whether it is supported by substantial evidence on the record as a whole. *See Arnick v. Sullivan*, 921 F.2d 174, 176 (8th Cir.1990). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). In reviewing the Secretary's decision, we must consider evidence that both supports and detracts from the Secretary's decision. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951); *Clarke v. Bowen*, 843 F.2d 271, 272 (8th Cir.1988).

### B. Subjective Complaints of Pain

Ghant argues there is not substantial evidence on the record to show he was capable of performing gainful employment. He contends the Secretary improperly discredited his complaints of pain and fatigue. We agree.

We have previously held that "pain can cause disability within the meaning of the Social Security Act." *Northcutt v. Califano*, 581 F.2d 164, 166 (8th Cir.1978).

"[B]ecause evidence of pain tends of necessity to be subjective in nature, it is for the ALJ in the first instance to evaluate the credibility to be accorded a claimant's subjective complaints of pain." *Delrosa v. Sullivan*, 922 F.2d 480, 485 (8th Cir.1991).

In *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984), we held that the Secretary must examine all of the evidence concerning a complainant's subjective complaints to determine whether the complaints are credible. When assessing the credibility of complaints, the Secretary must consider evidence relating to

the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:

1. the claimant's daily activities;

2. the duration, frequency and intensity of the pain;

3. precipitating and aggravating factors;

4. dosage, effectiveness and side effects of medication;

5. functional restrictions.

*Id.* We stated that subjective complaints could be discredited if they are inconsistent with the evidence as a whole. *Id.; accord Carlock v. Sullivan*, 902 F.2d 1341, 1343 (8th Cir.1990). An ALJ who rejects a claimant's complaints, however, must make an express credibility determination explaining his reasons for discrediting the complaints. *See Delrosa*, 922 F.2d at 485; *Prince v. Bowen*, 894 F.2d 283, 286 (8th Cir.1990).

The Appeals Council concluded that Ghant's ability to sit, stand, walk, and lift from the floor (his exertional limitations) depended upon the degree of pain he experienced from his orthopedic impairments. It rejected ALJ Cordek's finding that Ghant's complaints of functional limitation were credible on the grounds that ALJ Cordek set forth no reasons for his conclu-

---

**7.** The Appeals Council found that the collateral estoppel doctrine did not apply because the Social Security Administration did not make a decision concerning Ghant's disability prior to

September 1, 1983. It noted that Ghant received supplemental security income benefits through August 31, 1983 solely because he had qualified for benefits under a state program.

sion.[8] The Appeals Council then identified numerous inconsistencies in the record as a whole to support its conclusion that Ghant's subjective complaints of pain and functional limitation were not credible. It specifically noted that Ghant had obtained and worked under two Social Security numbers, had a history of incarceration, had made false statements to the Social Security Administration regarding his work activity after 1976, and had given inconsistent accounts of his daily activities to different physicians. In addition, the Appeals Council adopted ALJ Varga's findings that Ghant had a spotty work record and used very little pain medicine.[9] The Appeals Council then concluded that Ghant had the residual functional capacity for light work in an environment free of pulmonary irritants.

■ After reviewing the record as a whole, we conclude that the Appeals Council erred in discrediting Ghant's subjective complaints of pain and functional limitation. Ghant's history of incarceration has no effect on Ghant's credibility in this case. Ghant was incarcerated more than twenty years ago for committing armed robbery.[10] Ghant's explanation for using two social security numbers, to conceal his prison record so he could get a job, is not sufficient reason to disregard the complaints of pain that were substantiated by other evidence in the record. Medical evidence clearly supports his nonexertional impairments.

The fact that Ghant took very little pain medication does not establish that Ghant's complaints of pain were not credible. Ghant testified that he does not take his medication often because the medication knocks him out and causes him to feel bad in the morning. App. II at 513–14. In view of the effect the medication allegedly has on him, we do not believe Ghant's failure to take his pain medication warrants discrediting his subjective complaints of pain.

■ Ghant's daily activities do not indicate that his subjective complaints of pain and functional limitation were not fully credible or that he could perform light work. In September, 1986, Ghant testified that he cooks, grocery shops, plays cards and dominos, fishes, and attends church about once a month. A person who performs light work may be required to do a good deal of walking, sitting and standing, lifting of up to twenty pounds and frequent lifting of ten pounds. 20 C.F.R. § 404.1567(b) (1990). Ghant's ability to do housework is not necessarily substantial evidence that he can perform the requirements of light work. We have previously held that a person who is able to do light housework is not necessarily able to perform gainful employment. See Ricketts v. Secretary of Health & Human Services, 902 F.2d 661, 663 (8th Cir.1990); Easter v. Bowen, 867 F.2d 1128, 1130 (8th Cir.1989); Yawitz v. Weinberger, 498 F.2d 956, 960 (8th Cir.1974). Moreover, Ghant's ability to fish and play dominos does not indicate that he can perform light work forty hours a week. These activities are primarily sedentary in nature and do not establish that Ghant could do a substantial amount of walking or standing.

In addition, the inconsistencies in Ghant's accounts of his daily activities do not merit discrediting his subjective complaints of pain. Ghant's 1985 account of his daily activities was substantially similar to his account in 1986. Moreover, the differences in the two accounts could be explained if Ghant's health deteriorated from 1985 to

---

8. To the contrary, ALJ Cordek expressly stated that he made his assessment after he observed the claimant, the claimant's wife, and two medical advisors testify. App. II at 398. He also referred specifically to the objective medical record. App. II at 398.

9. A claimant who fails to treat a remedial condition without good reason is not entitled to benefits. 20 C.F.R. § 404.1530 (1990).

10. Under Rule 609 of the Federal Rules of Evidence, evidence of a conviction of a crime is usually not admissible if more than ten years have elapsed "since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date...." Fed.R.Evid. 609. The rationale behind this rule is that a conviction which occurred in the distant past may not be probative of a witness' present character or reliability.

1986. Ghant's wife indicated in October, 1986, that Ghant recently had become more limited in what he could do.

Notwithstanding the inconsistencies in the record, there is substantial evidence on the record as a whole to find Ghant's complaints of pain credible. After reviewing the entire record, ALJ Cordek specifically found that Ghant's complaints of pain were supported by objective medical evidence. Moreover, Doctors Ansari, Johnson, and Greenberg stated that Ghant had considerable pain.[11]

### C. Treating Physician's Opinion

Ghant also argues that the Appeals Council should have given more weight to Dr. Johnson's opinion because he was Ghant's treating physician since 1973. Dr. Johnson opined that Ghant was totally and permanently disabled for gainful employment by 1977. The Appeals Council gave little weight to Dr. Johnson's opinion stating that Dr. Johnson's reports did not contain medical findings to support the degree of functional limitation he described. The Appeals Council also noted that Dr. Johnson's opinion conflicted with Ghant's work history after 1977.

The opinion of a treating physician is entitled to great weight "unless it is unsupported by medically acceptable clinical or diagnostic data." *Kirby v. Sullivan*, 923 F.2d 1323, 1328 (8th Cir.1991); *see also Ward v. Heckler*, 786 F.2d 844, 846 (8th Cir.1986). "It is well settled ... that a fact-finder is not permitted to adopt the opinion of a consulting physician who examined [the] claimant only once over the opinion of [the] claimant's treating physician." *Robertson v. Sullivan*, 925 F.2d 1124, 1126 (8th Cir.1991). Moreover, a treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight. *McGhee v. Harris*, 683 F.2d 256, 259 (8th Cir.1982).

Our review of the record as a whole persuades us that Dr. Johnson's opinion was supported by medically acceptable clinical data. In 1986, Dr. Johnson examined Ghant and made specific diagnoses to support his opinion. We also find that Dr. Johnson's testimony should not be disregarded simply because Ghant worked after 1977. Although Ghant attempted to work after the onset of his alleged disability, Ghant claims he was unable to work for any length of time because of his health. Moreover, Ghant's attempts to work do not affect the reliability of his physician's expert opinion. *Kirby*, 923 F.2d at 1328 (claimant's desire to retire early due to job dissatisfaction does not detract from the reliability of her physician's opinion based on medically acceptable clinical and diagnostic data).

### III. Conclusion

For the foregoing reasons, we reverse the district court's grant of summary judgment in favor of the Secretary and remand this case to the Secretary to determine benefits for Ghant.

---

**11.** Although the Appeals Council used the grid as a "framework" to find no exertional basis for disability, its wrongful refusal to weigh the obvious nonexertional impairments makes its evaluation of the grid meaningless. *See* Medical Vocational Guidelines found in Appendix 2 to Subpart P of Part 404, Table No. 2, 20 C.F.R. § 416.969 (1990).