_____

No. 95-2470
_____

Virgil Clark,                          *
                                       *
          Appellant,                   *
                                       *
     v.                                *   Appeal from the United States
                                       *   District Court for the
Shirley S. Chater, Commissioner        *   Western District of Missouri
of the Social Security                 *
Administration,                        *        [TO BE PUBLISHED]
                                       *
          Appellee.                    *


                          _____

            Submitted:  January 5, 1996

               Filed:  April 24, 1996
                          _____

Before McMILLIAN, WOLLMAN, and HANSEN, Circuit Judges.
                          _____


PER CURIAM.


     Virgil Clark appeals from the district court's order affirming the
decision of the Commissioner of the Social Security Administration to deny
Clark disability insurance benefits.  We affirm.


     Clark was born March 9, 1948, has an eighth-grade education, and
worked as a salvage yard foreman at a metal plating company.  In August
1990, Clark applied for disability insurance benefits, claiming disability
due to diabetes and a back injury.  His application was denied initially
and upon reconsideration.  At Clark's request, an Administrative Law Judge
(ALJ) conducted a hearing, at which Clark was represented by counsel.  The
Appeals Council later remanded the case for a second hearing.

Clark testified that he last worked in December 1987. He stated he experienced moderate chest pains; constant severe pain in his left shoulder, arms, and legs, which was exacerbated by prolonged standing or walking; and pain when he moved his neck. He occasionally had memory and concentration problems. Clark stated he could not bend or squat completely to the floor; during an eight-hour work day he would need to lie down about six times for ten to thirty minutes; he could sit for only thirty-five minutes at a time, and could stand for about one hour. He had trouble focusing his eyes, which his doctors said was related to his high cholesterol and diabetes. Contrary to his testimony at the first hearing, Clark stated at his second hearing that he drank alcohol whenever he could.

A consultative neurologist testified that Clark's medical records indicated his blood lipids were markedly elevated and he was diabetic; neurologically, there was no evidence of objective neurological abnormalities, and some evidence of back and neck movement limitations. The neurologist disputed Clark's treating physician's opinion that there was a relationship between Clark's hyperlipidemia (high elevation of cholesterol and fatty acids in the blood) and his subjective complaints of pain. Another consultative neurologist testified that test results did not support the severity of Clark's complaints. A vocational expert testified that Clark had not acquired transferrable skills from his past relevant work, but that there were unskilled entry-level sedentary jobs in the national economy which Clark could perform.

The ALJ ordered an orthopedic consultation with x-rays of the shoulders and knees to be performed by Clark's treating orthopedist, Harry Miller. Dr. Miller noted Clark was unable to flex or extend his neck muscles more than twenty degrees, had extremely poor range of shoulder motion (although he noted only minor spurring on the shoulder x-ray), had a decreased left hand grasp, and was unable to heel walk on his left side; Clark's

thoracic spine was unremarkable but his lumbar spine had "rather severe muscle spasm . . . with extreme loss of range of motion."  Dr. Miller had previously diagnosed a 1987 rotator cuff tear in the right shoulder, hyperlipidemia, and diabetes mellitus; described Clark's limited range of motion; and opined that Clark's pain, possible diabetic neuropathy, and lack of education precluded him from gainful employment.  Dr. Miller suggested that Clark's metabolic disease could produce neuritis or muscle and joint pain.

The ALJ concluded that the severity of Clark's pain was disproportionate to and not supported by the objective medical evidence; the EMG, x-ray, and neurological examinations were essentially normal; the minor degenerative joint changes and light defects of the cervical and lumbar spine did not explain Clark's allegations of severe pain; his treatment history was sporadic; and his earnings had been low since 1984 and thus he had little incentive to work.  The ALJ noted little treatment for alcohol abuse, and concluded the evidence did not show Clark had lost voluntary control of his consumption of alcohol.

The ALJ discounted Dr. Miller's opinion that Clark was disabled because his conclusions were "based on a complete acceptance of [Clark's] subjective complaints."  The ALJ credited the opinion of the neurological consultant who had stated that the medical findings and treatment history did not support the severity of Clark's complaints.  The ALJ discounted as outside his realm of expertise Dr. Miller's opinion that Clark's lack of education would prevent him from gainful employment.  The ALJ also noted that treating physicians were under considerable pressure to support patients in their quest for disability income, and that Clark's wife was employed at Dr. Miller's clinic.  The ALJ rejected Clark's testimony concerning his drinking habits and his need to lie down six times during an eight-hour day for pain relief.  Given the fact that Clark admitted at the second hearing that he had not told the truth while under oath at his first hearing, the ALJ's conclusion

that Clark's testimony was not credible finds substantial support in the record.

The ALJ concluded Clark could not return to his past relevant work. Shifting the burden to the Commissioner, the ALJ concluded that, based on the vocational expert's testimony, there were other jobs which Clark could perform which existed in significant numbers in the national and local economies. Thus, Clark was not entitled to disability insurance benefits. The Appeals Council denied further review. Clark sought judicial review, and the district court granted the Commissioner summary judgment.

Upon our careful review, we agree with the district court that the record as a whole reflects substantial evidence to support the Commissioner's decision. We conclude that the ALJ properly discounted the opinion of Clark's treating physician, in that his opinion was not consistent with the objective evidence in the record, and that the ALJ properly considered the factors set forth in Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984), in discounting Clark's subjective complaints of pain.

In addition, Clark has not demonstrated by his testimony or by the medical evidence that he has lost voluntary control of his alcohol consumption. See Metcalf v. Heckler, 800 F.2d 793, 796 (8th Cir. 1986). Thus, the ALJ did not err in excluding Clark's alleged uncontrolled use of alcohol from the hypothetical posed to the vocational expert. We also reject Clark's argument that the district court's issuance of a form denial is grounds for reversal. The district court expressly stated it had reviewed all the evidence in the record.

Accordingly, we affirm the judgment of the district court.

McMILLIAN, Circuit Judge, dissenting.

I would reverse and remand this case for further proceedings for two reasons. First, I believe the ALJ erred in discrediting Dr. Miller's opinion while accepting that of a consulting physician who did not examine Clark. We have held that "[t]he opinion of a treating physician is entitled to great weight `unless it is unsupported by medically acceptable clinical or diagnostic data.'" Ghant v. Bowen 930 F.2d 633, 639 (8th Cir. 1991) (quoting Kirby v. Sullivan 923 F.2d 1323, 1328 (8th Cir. 1991)).

After the first hearing, the ALJ ordered a consultative examination, including x-rays, to be performed by Dr. Miller. Dr. Miller reported that Clark had difficulty walking, sitting, or standing for longer than thirty minutes; had limited range of motion in his neck, shoulder, and lumbar spine; and had severe pain limiting his ability to do much of anything. The ALJ, however, discounted Dr. Miller's opinions for the very reason we ordinarily accord the treating physician's opinion greater weight than the opinions of other doctors in the case: Dr. Miller knew the patient. See Thomas v. Sullivan, 928 F.2d 255, 259 & n.3 (8th Cir. 1991) (quoting Schisler v. Heckler, 787 F.2d 76, 81 (2d Cir. 1986) ("the treating physician is usually more familiar with a claimant's medical condition than are other physicians")). I fail to understand why the ALJ ordered Dr. Miller to perform the examination and then discounted his findings because he was "under pressure to support patients in their quest" for benefits. Moreover, Dr. Miller did not rely only on subjective complaints in reaching his conclusions. The question is whether the medically acceptable clinical data contradicts Dr. Miller's opinions. None of the consultative physicians thought Clark was a malingerer; some suggested Clark's symptoms could represent early-stage peripheral neuropathy.

Second, because the standing/walking/movement restrictions which Dr. Miller found following his consultative examination were not considered in the hypothetical question, I believe the hypothetical did not precisely describe Clark's impairments. See Whitmore v. Bowen, 785 F.2d 262, 263 (8th Cir. 1986) (for vocational expert's opinion to qualify as substantial evidence, hypothetical question must precisely describe claimant's impairments).

Accordingly, I dissent.

A true copy.

    Attest:

       CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.