Dorothy J. KIRBY, Appellant,

v.

Louis W. SULLIVAN, M.D., Secretary
of Health and Human
Services, Appellee.

No. 89–2937.

United States Court of Appeals,
Eighth Circuit.

Submitted June 26, 1990.

Decided Jan. 16, 1991.

**1324**

Dennis Jennings, Kansas City, Mo., for appellant.

Gay Tedder, Asst. U.S. Atty., Kansas City, Mo., for appellee.

Before JOHN R. GIBSON and FAGG, Circuit Judges, and HEANEY, Senior Circuit Judge.

HEANEY, Senior Circuit Judge.

Dorothy J. Kirby appeals from the district court's grant of summary judgment to the Secretary of Health and Human Services (Secretary) in Kirby's action for judicial review of the Secretary's denial of her claim for Social Security disability benefits. We reverse and remand.

## BACKGROUND

Kirby, 53, has the equivalent of a high school education and was employed for seventeen years as a clerical worker for an insurance company. She claims disability with an onset date of May 1, 1987 due to high blood pressure; arthritis in her back, wrists, and hands; and carpal tunnel syndrome. Her applications for Social Security disability insurance benefits and Supplemental Security Income were denied initially and on reconsideration, and she requested and received a hearing before an administrative law judge (ALJ).

Kirby testified at the hearing that she suffers from pain in her lower back; frequent headaches; chest pains; aching joints, swelling, and an inability to grasp in her wrists and hands; and pain and swelling in her ankles. She stated that she had difficulty walking and driving a car; could not climb stairs; and could no longer shop, keep house, or garden.

Examinations performed by Anne Regier, M.D., a rheumatologist who saw Kirby once a month during the year before the hearing, indicate that Kirby had slight swelling in her wrists, hands, ankles, and feet; synovitis in her hands; and limited range of motion and extension in her back. Dr. Regier diagnosed inflammatory seronegative arthritis and carpal tunnel syndrome. Electrodiagnostic studies performed by James S. Zarr, M.D., confirmed that Kirby had carpal tunnel syndrome in her right hand, but showed no evidence of carpal tunnel syndrome in the left. Dr. Regier prescribed Motrin and Naprosyn for the arthritis and injected corticosteroids into the right carpal tunnel. Kirby declined to undergo carpal tunnel surgery. In response to a questionnaire submitted by Kirby's attorney, Dr. Regier opined that Kirby's impairments would prevent her from performing full-time sedentary work and could not be significantly improved with medical treatment.

X-rays performed by Gerald E. Staab, M.D., revealed disc space narrowing at the L4/L5 interspace of Kirby's back, from which Dr. Staab diagnosed degenerative disc disease.

An examination performed by Shuh–Min Wu, M.D., at the request of the Social Security Administration (SSA) disclosed the following positive findings: high blood pressure, moderate limitation of the range of motion of the lumbar spine, markedly decreased general strength, marked weakness of the extremities, and mild local heat in both wrists. Dr. Wu diagnosed inflammatory joint disease and possible carpal tunnel syndrome, but noted that Kirby may not have been taking full therapeutic advantage of her medications.

Steven A. Mandracchia, Ph.D., and J. Scott Morrison, M.D., performed psychological and psychiatric examinations of Kirby at the SSA's request. Kirby had a full-scale score of 78 on the Wechsler Adult Intelligence Scale Revised. Dr. Mandracchia reported that she demonstrated "a uniformly subaverage performance across all

intellectual tasks," but that she possessed functional literacy and calculation skills and exhibited no attention deficit. Her ability to encode and recall newly presented material was mildly to moderately impaired, and she showed limitations in immediate memory functioning for both verbal and figural material. Dr. Mandracchia concluded that Kirby possessed borderline overall intellectual capacity with mild to moderate deficits in immediate memory. He noted that she displayed serious limitations on all measures involving fine motor and manual dexterity skills, probably as a result of her arthritic condition.

Dr. Morrison diagnosed Kirby as having an adjustment disorder with depressed mood, and believed that her depressive symptoms would benefit from an improvement in her physical condition. He observed that she had difficulty rising from her chair and looked tired and depressed, but noted that "[t]here is a certain dramatic presentation and one wonders if there is some exaggeration for effect." He did not believe that her psychiatric symptoms alone would prevent her from working.

Kirby received treatment for hypertension and arthritis and counseling from a social worker at Wayne Miner Neighborhood Health Center. Kirby's blood pressure persistently showed diastolic readings at or above 100 despite a variety of prescribed medications. Treatment notes indicate that she was "lackadaisical" about taking medications and sometimes ran out of prescriptions.

The social worker who counseled Kirby noted that she experienced increasing pressure on her job following a demotion in 1985 and complained about her work. Kirby discussed the possibility of early retirement and informed the social worker that she was seeking social security disability benefits. The social worker believed that Kirby's medical problems were serious, but

not so serious as to render her disabled. Kirby went on sick leave from her employer in May 1987 and was receiving $338 per month in sick leave or disability payments at the time of her hearing.[1]

The ALJ found Kirby's testimony at the hearing not to be credible because of her "demonstrated history of seeking ways to retire early from employment, her established noncompliance with recommended treatment despite the alleged severity of her health problems, and inconsistencies between the alleged severity of her symptoms ... and persistent findings of only 'minimal' to 'slight' objective abnormalities." The ALJ also rejected Dr. Regier's opinion that Kirby's impairments rendered her unable to perform full-time sedentary work. He found this opinion inconsistent with such objective findings as only "slight" finger swelling and no reasonable explanation for the severity of Kirby's left arm symptoms and with treatment notes commenting on Kirby's motivation.

The ALJ found the medical evidence established that Kirby suffered from hypertension, right carpal tunnel syndrome, and possible seronegative arthritis, but that she did not have an impairment or combination of impairments equivalent to one listed in the Social Security regulations. He determined that Kirby retained the residual functional capacity to perform work-related activities except for work involving more than "light" exertion, such as lifting and carrying more than ten pounds frequently and standing or walking for unlimited periods. Because Kirby's former job did not require the performance of activities precluded by these limitations, the ALJ concluded that she could return to her past relevant work and consequently was not disabled.

The Appeals Council denied Kirby's request for review, making the ALJ's determination the final decision of the Secretary.

1. The record is unclear as to the nature of the payments Kirby received from her employer, the Travelers Insurance Company, after leaving work in May 1987. A March 1988 letter from the company to Dr. Regier requested her opinion regarding whether Kirby was a candidate for total and permanent medical disability. Dr.

Regier replied that she did not foresee Kirby returning to work in the near future and stated that Kirby's intention was to go on permanent disability. Kirby stated in an affidavit dated August 23, 1988 that Travelers had placed her on permanent disability.

On cross-motions for summary judgment, the district court affirmed the Secretary's decision. Kirby appeals.

## DISCUSSION

■ Our task on review is to determine whether substantial evidence in the record as a whole supports the Secretary's denial of benefits to Kirby. *See Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir.1987). In making this determination, we must review the entire administrative record, taking into account evidence which fairly detracts from the ALJ's findings. *Turpin v. Bowen*, 813 F.2d 165, 169 (8th Cir.1987).

■ Kirby claims that substantial evidence in the record as a whole fails to support the ALJ's conclusions that she can return to her past relevant work and that her testimony was not credible. She also argues that the ALJ erred in failing to consider the cumulative effects of her impairments and in rejecting the opinion of her treating physician. While we find some merit to each of these claims, we reverse and remand because of the ALJ's failure properly to consider the specific demands of Kirby's former work in concluding that she could return to it.

Kirby bore the burden of proving at the administrative hearing that she suffered from a medically determinable impairment or impairments which precluded the performance of her past relevant work. *See Warner v. Heckler*, 722 F.2d 428, 430 (8th Cir.1983). The ALJ found that Kirby failed to meet this burden because her impairments of hypertension, right carpal tunnel syndrome, and possible seronegative arthritis would, at most, prevent her from frequently carrying more than ten pounds and walking or standing for unlimited periods. Because Kirby's clerical job did not require such activities, the ALJ concluded that her impairments would not preclude her from performing it.

We find the ALJ's analysis deficient and unsupported by what little evidence the record contains concerning the functional demands of Kirby's former position as a clerical worker. Step four of the sequential analysis used in Social Security disability determinations requires the ALJ to review the claimant's residual functional capacity and the physical and mental demands of the claimant's past work. *See* 20 C.F.R. § 404.1520(e) (1990). "[T]he ALJ has a duty to *fully* investigate and make *explicit* findings as to the physical and mental demands of a claimant's past relevant work and to compare that with what the claimant herself is capable of doing before he determines that she is able to perform her past relevant work." *Nimick v. Secretary of Health & Human Servs.*, 887 F.2d 864, 866 (8th Cir.1989) (emphasis in original). These findings require evidence of the "actual functional demands and job duties of a particular past relevant job" or the "functional demands and job duties of the occupation as generally required by employers throughout the national economy." *See id.* n. 2 (quoting S.S.R. No. 82–61, Soc.Sec.Rep. 836, 838 (West 1983)). An SSA ruling interpreting the regulations stated:

> The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit.

S.S.R. No. 82–62, Soc.Sec.Rep. 809, 812 (West 1983).

The ALJ's perfunctory conclusion that Kirby's position as a clerical worker did not require more than light exertion falls far short of the review required by the Secretary's own regulations. The only evidence in the record regarding the tasks required by Kirby's former job is a vocational report Kirby completed for the SSA when she first applied for disability benefits. She described a day's duties as follows:

> I used the letter opening machine—I reached in each envelope & pulled out the claims separating them in different trays after opening about 1,000 envelopes & separting [sic] them, I then

had to stand in the corner & sort them with knowledge of knowing the companies and to what lady got what company. Then type envelopes for xrays and send them back to the doctors offices, which amounted to about 100 per day, then alphabetize all these claims, then stamp them one at a time, then send back claims that needed more information, and that went to other offices. This is all one days duties.

Although the ALJ may have correctly concluded that Kirby's clerical position did not involve more than light exertion, he failed to consider whether, in light of her documented impairments, she retained the residual functional capacity to perform a job requiring constant hand and finger manipulation.

Every doctor who examined Kirby reported some positive findings consistent with her complaints of arthritic pain and swelling in her hands and wrists. Dr. Regier, Kirby's treating rheumatologist, observed swelling and synovitis in her hands and wrists and diagnosed inflammatory seronegative arthritis. Dr. Wu reported a marked decrease in the grip of both hands and mild local heat in her wrists, indicating inflammatory joint disease. Richard Cronemeyer, M.D., a radiologist, reported mild radiocarpal joint space narrowing in both Kirby's hands, although he observed no significant degenerative changes. Dr. Mandracchia indicated that Kirby's fine motor and manual dexterity skills were seriously limited. C. Scanlon, M.D., of the Kansas City Medical Group observed deformities in the ulnar bones of Kirby's wrists and diagnosed osteoarthritis. Treatment notes from Wayne Miner Neighborhood Health Center indicate that Kirby was treated there for arthritis from May 1987 through the time of her administrative hearing.

■ Similarly, the record is replete with undisputed clinical findings that Kirby suffers from right carpal tunnel syndrome. Although the ALJ acknowledged these findings, he failed to evaluate the effects of Kirby's arthritis and carpal tunnel syndrome on the residual functional capacity of her hands. Additionally, the ALJ made no effort to fully investigate and to make explicit findings regarding the actual physical demands of Kirby's former clerical position. A comparison of the claimant's residual functional capacity with the actual functional demands of her particular past employment is essential to a determination that she is capable of performing her past relevant work. *See Nimick*, 887 F.2d at 866–68. The ALJ had a duty to develop the record fully in this regard. *See Driggins v. Harris*, 657 F.2d 187, 188 (8th Cir.1981); S.S.R. No. 82–62, Soc.Sec.Rep. 809, 812 (West 1983). Because he failed to do so, his conclusory determination that Kirby could return to her past relevant work is not supported by substantial evidence. *See Nimick*, 887 F.2d at 868.

■ On remand, the ALJ may supplement the record by requesting information from Kirby's former employer as to the physical and mental demands of her position as a clerical worker. Alternatively, the ALJ may refer to the job descriptions in the *Dictionary of Occupational Titles* for a definition of Kirby's job as it is usually performed in the national economy. The ALJ should also determine whether Kirby has, in fact, been placed on permanent medical disability by her former employer. Although determinations of disability made by other entities are not binding on the SSA, 20 C.F.R. § 404.1504 (1990), such a finding is particularly relevant to Kirby's ability to perform her past work and is entitled to some weight, *see Turpin v. Bowen*, 813 F.2d 165, 172 (8th Cir.1987).

If, after proper review of an adequately developed record, the ALJ determines that Kirby cannot return to her past relevant work, the burden will shift to the Secretary to prove the existence of other jobs in the national economy which Kirby can perform. *See Bradshaw v. Heckler*, 810 F.2d 786, 789 (8th Cir.1987). Particular attention should be paid to Kirby's age and intellectual abilities in meeting this burden.

■ Because we remand this case for further administrative proceedings, the ALJ's discrediting of Kirby's testimony and of the opinion of her treating physician

deserve brief comment. The ALJ found Kirby's testimony not credible because of "her persistent history of noncompliance with prescribed treatment regimens." The record does contain evidence that Kirby sometimes failed to take her blood pressure medications as prescribed. The record also indicates, however, that Kirby, an individual of borderline intelligence with mild to moderate memory impairment, was prescribed as many as eight different medications for hypertension and arthritis to be taken daily. Additionally, her prescriptions were altered several times because of side effects Kirby experienced. Under these circumstances, the ALJ should examine Kirby's subjective ability to comply with prescribed treatment regimens before assuming that her noncompliance was either willful or indicative of an exaggeration of her symptoms. *See Tome v. Schweiker,* 724 F.2d 711, 714 (8th Cir.1984).[2]

■ The ALJ discounted Dr. Regier's opinion that Kirby was unable to perform full-time sedentary work because he found it inconsistent with objective findings and with treatment notes regarding Kirby's motivation to seek early retirement from her job. A treating physician's opinion is entitled to great weight unless it is unsupported by medically acceptable clinical or diagnostic data. *See Ward v. Heckler,* 786 F.2d 844, 846 (8th Cir.1986). We have already reviewed the record's ample objective findings that Kirby suffers from arthritis and carpal tunnel syndrome. We also note that while Kirby's desire to retire early because of job dissatisfaction may bear on her own credibility, it does not detract from the reliability of a physician's opinion based on medically acceptable clinical and diagnostic data. Thus, the ALJ should carefully re-examine the medical ev-

idence supporting Dr. Regier's opinion in determining the proper weight to accord it on remand.

### CONCLUSION

For the foregoing reasons, we reverse the district court's order granting summary judgment to the Secretary with directions to remand this case to the Secretary for further proceedings consistent with this opinion.

JOHN R. GIBSON, Circuit Judge, dissenting.

I respectfully dissent. I would affirm on the basis of the district court's opinion.

---

**2.** The ALJ also referred to Kirby's refusal to consider "rather simple outpatient carpal tunnel surgery" despite the alleged severity of her wrist problems in discrediting her testimony. The record contains no evidence that the surgery Kirby declined was simple or could be performed in an outpatient visit. More importantly, Dr. Regier made no claim that the surgery could restore Kirby's ability to work and predicted that continued medical treatment would not significantly improve Kirby's condition. To

receive Social Security disability benefits, a claimant must follow treatment prescribed by his physician if such treatment will restore his ability to work. 20 C.F.R. § 404.1530 (1990). Failure to follow a treatment mode suggested with only speculative expectation of medical improvement, however, is neither a valid reason for disallowing benefits nor for discrediting a claimant's testimony. *Weakley v. Heckler,* 795 F.2d 64, 66 (10th Cir.1986); *see Ludden v. Bowen,* 888 F.2d 1246, 1249 (8th Cir.1989).