**Allen GROEPER, Appellant,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Appellee.**

No. 90–1645.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 13, 1990.

Decided May 9, 1991.

Robert A. Crowe, St. Louis, Mo., for appellant.

Joseph Moore, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before McMILLIAN and BEAM, Circuit Judges, and ROSENBAUM,[*] District Judge.

BEAM, Circuit Judge.

Allen Groeper appeals from the district court's order affirming the Secretary's denials of his claims for disability insurance benefits and supplemental security income. The district court, adopting the

* The HONORABLE JAMES M. ROSENBAUM, United States District Judge for the District of Minnesota, sitting by designation.

report and recommendation of the magistrate judge, found that substantial evidence supported the ALJ's determination that Groeper was not disabled. On appeal, Groeper asserts that the ALJ's decision was not supported by substantial evidence.[1] We reverse and remand.

## I. BACKGROUND

Groeper was born on April 19, 1959, and has completed twelve years of education. In June 1981, Groeper was involved in an all-terrain vehicle accident and suffered severe injuries and permanent brain damage. In June 1982, after Groeper's physical injuries had healed, his physician, Kim Colter, M.D., certified that he could return to work. Groeper had requested permission to return to work; however, he told Colter that he would "rather not work if he didn't have to." Administrative Record at 209. Groeper was unsuccessful in his attempt to resume his work as a factory press operator, and has not engaged in substantial gainful activity since the accident.[2]

Groeper filed applications for disability benefits and supplemental security income on March 7, 1988, claiming that he was disabled due to a brain injury and accompanying memory loss. The applications were denied initially and on reconsideration. At Groeper's request, an administrative hearing was held. As indicated, the ALJ found that Groeper was not disabled. The Appeals Council denied Groeper's request for review. He then filed this action.

Groeper has been examined by several physicians and psychologists at the request of the Missouri Department of Vocational Rehabilitation and, after his application for benefits, at the request of the Social Security Administration. In March 1983, James T. Hurley, a licensed psychologist, examined Groeper and determined that his full-scale IQ was 75, which placed him in the "Borderline range of intelligence." Id. at 221. Hurley noted that Groeper was "a poor historian for both personal and medical history" and was "very slow in responding to direct questions." Id. at 220. Hurley found that, consistent with borderline intelligence, Groeper functioned with a significant deficit in reading, spelling and arithmetic.[3] Id. at 221.

In February 1983, John B. Crane, M.D., conducted a neurological evaluation of Groeper. Crane concluded that Groeper's memory was unremarkable except that he had little recollection of the accident. Crane noted that Groeper lacked motivation and had stated that he did not want to work because "[i]t ain't no fun." Id. at 216–18. In Crane's opinion, Groeper's lack of motivation may be related to his brain injury. Id. at 218. Crane evaluated Groeper again in May 1983. He again noted Groeper's lack of motivation and that Groeper's father had indicated that Groeper's behavior was no different than before the accident. Id. at 214.

In addition, the record contains a report prepared by a vocational evaluator follow-

1. Groeper also claims that the ALJ determined that he was not disabled without the necessary testimony of a vocational expert. Groeper, who suffers from a nonexertional impairment, asserts that *Thompson v. Bowen*, 850 F.2d 346 (8th Cir.1988), requires a vocational expert's testimony whenever a claimant's residual functional capacity (RFC) is affected by a severe nonexertional impairment. The holding in *Thompson*, however, is limited to those cases involving application of the medical-vocational guidelines. *See Martin v. Sullivan*, 901 F.2d 650, 653 (8th Cir.1990). When a claimant meets his burden of establishing that he cannot return to his past relevant work, he will be found to be disabled unless the Secretary proves that the claimant can perform other jobs in the national economy. If the claimant suffers from a nonexertional impairment that limits his ability to perform the full range of work in one of the specific

categories set forth in the guidelines, the Secretary's burden can be met only through the testimony of a vocational expert. *Thompson*, 850 F.2d at 349–50. Here, the ALJ found that Groeper was able to perform his past work. Thus, the burden was not shifted to the Secretary, and a vocational expert's testimony was not required. On remand, a vocational expert's testimony may be required if the ALJ concludes that Groeper cannot perform his past work.

2. At the time of the hearing Groeper was working in a sheltered workshop. This work, which is done under close supervision and in a noncompetitive atmosphere, involves simple assembly tasks, packaging tasks, and handling wood.

3. Hurley found that Groeper had a grade rating in reading of 4.8, in spelling of 2.7 and in arithmetic of 3.6. *Administrative Record* at 221.

ing a two-day consultation in early August 1983. The report indicates that Groeper performed most of the assigned tasks at a low-competitive employment potential or sheltered employment level. *Id.* at 223–24. The evaluator observed that Groeper, although somewhat slow, was able to follow simple instructions and to complete all of the assigned tasks. When questioned about whether he wanted to work, Groeper stated: "No, but the money would help." *Id.* at 224. The counsellor recommended no further vocational services for Groeper until he "demonstrate[d] a desire to pursue employment." *Id.*

Groeper's next series of examinations began after he applied for disability benefits. On April 1, 1988, Joseph M. Long, Ph.D., performed a psychological evaluation on Groeper and determined that Groeper's full-scale IQ was 77, which placed him in the "Borderline range of intelligence." *Id.* at 205. He diagnosed a moderate memory impairment based on Groeper's inability to recall details from an oral narrative, to recall numbers held in short-term auditory memory, and to learn word pairings. *Id.* According to Long's report, Groeper was able to understand and follow the instructions given during the examination. *Id.* at 204. Long opined that Groeper was capable of handling his own financial affairs. *Id.* at 205.

Eugene Adelmann, M.D., conducted a neurological evaluation of Groeper on April 27, 1988. He concluded that Groeper suffered from a "residual encephalopathy with significant immediate short term and remote memory deficits." *Id.* at 194. Adelmann doubted that Groeper could handle his basic personal and financial affairs and believed that Groeper suffered from a "pre-existing learning disability or at least dull normal intelligence." *Id.*

On May 24, 1988, Herbert R. Berger, a licensed psychologist, conducted a comprehensive neuropsychological evaluation of Groeper. Berger concluded that Groeper's full-scale IQ was 89,[4] which placed him "in

the highest reaches of the dull normal intellectual range." *Id.* at 186. Briefly summarized, he determined that Groeper had a short attention span; was slow to learn nonverbal tasks; may be unable to follow verbal or written directions; had problems with reading, math and paper skills; and had impaired general memory functions. *Id.* at 186–87. Berger concluded that Groeper suffered from at least moderate to severe brain damage. *Id.* at 187.

In addition to submitting a report on his evaluation of Groeper, Berger testified at the administrative hearing. He stated that Groeper would have difficulty following instructions and concentrating on his work. Groeper would have trouble with jobs that require "hand-eye coordination, finger dexterity, [and] manual dexterity." *Id.* at 30. He stated that Groeper suffered from aphasia (the inability to understand verbal or written communication), dyscalculia (the inability to do arithmetic), dysnomia (the inability to name objects seen), dyspraxia (the inability of the brain to tell the hands what to do), spelling dysgnosia (the inability to spell), and dysarthria (the inability to reproduce sound). *Id.* at 33–35.

Alan Michel, a vocational rehabilitation counsellor for the State of Missouri, also testified. He stated that, based on Groeper's medical and psychological evaluations, he had determined that Groeper suffered from a major handicap. Thus, he had certified that Groeper was not employable in competitive industry, but that Groeper had the capacity for sheltered workshop employment. *Id.* at 45–46. Michel also stated that Groeper has had difficulty following the rules at the sheltered workshop, although he did not elaborate. *Id.* at 48.

Groeper's mother testified at the administrative hearing that Groeper was not the same as he was before the accident. *Id.* at 50. She indicated that before the accident Groeper lived by himself and maintained steady employment, but that he has been

---

**4.** At the administrative hearing, Mr. Berger testified that he used the Wechsler Adult Intelligence Scale (WAIS), which overstates an IQ determined by the Wechsler Adult Intelligence Scale– Revised (WAIS–R) by about ten points. *Id.* at 40. Groeper's previous IQ tests, which resulted in full-scale scores of 75 and 77, were WAIS–R tests.

unable to do so since the accident.[5] Further, she testified that since the accident he sometimes forgets telephone messages; he sometimes forgets, in mid-sentence, what he is talking about; and he sometimes does not understand explanations. *Id.* at 51–52.

Finally, Groeper testified briefly at the hearing. He was not sure whether he was twenty-seven or twenty-eight years of age and stated that he barely remembered his accident. *Id.* at 54–55. He stated that since the accident the only work that he had done was helping transport scrap cars to St. Louis and mowing a neighbor's lawn. *Id.* at 56. Groeper also testified that, although he had once smoked in a restroom, he was not aware that he had violated any other rules at the sheltered workshop. *Id.* at 55.

After considering the evidence, the ALJ determined that Groeper suffered from organic brain damage with mental retardation, but that he did not suffer from an impairment or combination of impairments equal to those listed in the regulations. *See* 20 C.F.R. Part 404, Subpart P, App. 1, § 12.05 (1990). The ALJ noted that Groeper's father had indicated that Groeper was not significantly different after the accident; that Groeper had stated, more than once, that he did not want to work; and that Groeper was able to follow simple instructions and perform assigned tasks during the evaluations. Administrative Record at 13. The ALJ concluded that Groeper was restricted to simple repetitive work. While this restriction did not allow him to return to his work as a press operator, the ALJ found that Groeper was not disabled because his impairment did not affect his ability to return to his past work as a bus boy or a baker's helper. *Id.*

The ALJ recognized that the testimony of Berger and Michel indicated a possible disability. However, the ALJ discounted this testimony because it was not supported by any evidence other than Berger's evaluation and report. Specifically, the ALJ found that, although Michel stated

that Groeper had difficulty accepting the rules at the sheltered workshop, the evidence indicated that, during the short time he had been at the workshop, Groeper's work had been satisfactory and he violated only one workplace rule. *Id.* at 14. While Berger's report and testimony indicated that Groeper had problems with coordination and dexterity, the ALJ noted that the other medical evidence did not support this conclusion. *Id.* Further, Groeper's mother testified that Groeper suffered from only *occasional* forgetfulness and *occasional* problems communicating. She did not mention any other limitations. *Id.*

## II. DISCUSSION

■ Our review of the denial of benefits is limited to determining whether the decision is supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g); *Kirby v. Sullivan,* 923 F.2d 1323, 1326 (8th Cir.1991). "In making this determination, we must review the entire administrative record, taking into account evidence which fairly detracts from the ALJ's findings." *Kirby,* 923 F.2d at 1326 (citing *Turpin v. Bowen,* 813 F.2d 165, 169 (8th Cir.1987)).

The ALJ found that Groeper was not disabled because Groeper retained the residual functional capacity to return to his past work. Groeper contends that the ALJ's finding that he was not disabled was not supported by substantial evidence. He asserts that the only in-depth evaluations of his mental and performance abilities clearly indicated that he was disabled. Further, Groeper believes that his lack of motivation to work was not relevant if he was actually unable to work. And, he asserts that his lack of motivation resulted from his brain injury. Although Groeper does not specifically focus on the ALJ's finding that he was able to return to his past work, our review is limited to whether substantial evidence supports that finding.

Groeper presented evidence of his organic brain damage and the resulting memory

**5.** At the time of the hearing, Groeper lived at home. However, it appears that he has lived on his own at least part of the time since the

accident. *See* Administrative Record at 214, 216, 220.

loss and attention, communication, and memory deficits in an effort to meet his burden of proving that he was unable to return to his past work. The ALJ discounted much of this evidence and discredited Groeper's complaints of disability because of inconsistencies in the medical evidence and because of the statements of Groeper's parents which did not support the severity of the disability described by Berger. The ALJ did find that Groeper's work activities were limited to simple repetitive tasks. And, work as a bus boy or a baker's helper would not require performance of activities beyond Groeper's ability.

When evaluating whether a claimant is able to return to his past work, the ALJ is required to follow the appropriate guidelines.

> If we cannot make a decision based on your current work activity or on medical facts alone, and you have a severe impairment(s), we then review your residual functional capacity and the physical and mental demands of the work you have done in the past. If you can still do this kind of work, we will find that you are not disabled.

20 C.F.R. §§ 404.1520(e), 416.920(e) (1990). According to the Secretary's interpretation, sections 404.1520(e) and 416.920(e) require

> careful consideration of the interaction of the limiting effects of the person's impairment(s) and the physical and mental demands of his or her PRW to determine whether the individual can still do that work.
>
> ....
>
> The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issues as clearly and explicitly as circumstances permit.
>
> Sufficient documentation will be obtained to support the decision. Any case requiring consideration of PRW will contain enough information on past work to permit a decision as to the individual's ability to return to such past work....
>
> Adequate documentation of past work includes factual information about those work demands which have a bearing on the medically established limitations. Detailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate. This information will be derived from a detailed description of the work obtained from the claimant, employer, or other informed source.... In addition, for a claim involving a mental/emotional impairment, care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g., speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work.

S.S.R. No. 82–62, Soc. Sec. Rep. 809, 811–12 (West 1983).

This court has held, in accord with Ruling 82–62, that an ALJ has an obligation to "fully investigate and make *explicit* findings as to the physical and mental demands of a claimant's past relevant work and to compare that with what the claimant herself is capable of doing before he determines that she is able to perform her past relevant work." *Nimick v. Secretary of Health and Human Servs.*, 887 F.2d 864, 866 (8th Cir.1989). *Accord Kirby*, 923 F.2d at 1326–27. The ALJ's failure to fulfill this obligation requires reversal. *Id.* at 1327. *But see Battles v. Sullivan*, 902 F.2d 657, 659 (8th Cir.1990) (if record contains substantial evidence that claimant can perform past work, failure to develop past work record in full detail does not require remand).

An ALJ's decision that a claimant can return to his past work must be based on more than conclusory statements. The ALJ must specifically set forth the claimant's limitations, both physical and mental, and determine how those limitations affect

the claimant's residual functional capacity. The ALJ must also make explicit findings regarding the actual physical and mental demands of the claimant's past work. Then, the ALJ should compare the claimant's residual functional capacity with the actual demands of the past work to determine whether the claimant is capable of performing the relevant tasks. *See Kirby,* 923 F.2d at 1326–27. A conclusory determination that the claimant can perform past work, without these findings, does not constitute substantial evidence that the claimant is able to return to his past work. *Id.* at 1327.

Here, the ALJ concluded that Groeper was able to perform simple repetitive tasks that have only minimal memory requirements. He also found that work as either a bus boy or a baker's helper fits within these restrictions. Administrative Record at 13–14. This is the extent of the ALJ's discussion of Groeper's limitations and the demands of Groeper's past work. The ALJ failed to fully investigate and to make findings regarding either the demands of Groeper's past work or Groeper's capabilities. Thus, he did not properly evaluate Groeper's ability to perform past work. *See Kirby,* 923 F.2d at 1327.

The record does contain some evidence of the physical demands of Groeper's past work. The vocational report Groeper completed at the time he applied for benefits sets forth the duties he performed. As a bus boy, Groeper swept, mopped, washed dishes and moved food from storage to preparation areas. Administrative Record at 148. As a baker's helper, he cut and shaped dough, rolled pie crust, and put icing and fruit on rolls. *Id.* at 149. However, there is no evidence regarding the mental demands of these jobs.

## III. CONCLUSION

The evidence supports the ALJ's finding that Groeper's residual functional capacity is limited by his impairments. However, the ALJ failed to make specific findings regarding what those limitations are. Although Groeper's complaints of disability may not be fully supported by the evidence, the ALJ failed to set forth which complaints of disability he discredited. The

ALJ also failed to set forth the specific requirements of Groeper's past work. While we recognize the ALJ's concern about awarding benefits to a young man who stated that he simply did not want to work, we cannot say that the ALJ's decision is supported by substantial evidence. We also recognize that the ALJ's decision may be the same after a proper analysis of Groeper's limitations and past work demands. The judgment of the district court granting the Secretary's motion for summary judgment is reversed. This matter is remanded with instructions to remand to the Secretary for a rehearing consistent with this opinion.