Barbara A. **CARNES**,
Plaintiff–Appellant,

v.

Louis W. **SULLIVAN**, Secretary of Health & Human Services,
Defendant–Appellee.

No. 90–7487.

United States Court of Appeals,
Eleventh Circuit.

July 26, 1991.

1216

David B. Carnes, Carnes, Wamsley, Waid & Hyman, P.C., Gadsden, Ala., for plaintiff-appellant.

Frank W. Donaldson, U.S. Atty., Marvin Neil Smith, Jr., Jenny L. Smith, Asst. U.S. Attys., Birmingham, Ala., for defendant-appellee.

Before JOHNSON and COX, Circuit Judges, and MORGAN, Senior Circuit Judge.

MORGAN, Senior Circuit Judge:

## FACTS

Appellant Barbara Carnes filed her application for disability insurance benefits and supplemental security income in February, 1988. Her application was denied both initially and upon reconsideration. Carnes then requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held in May, 1989. The ALJ denied the claimant's application, and that decision became the final decision of the Secretary in November, 1989, when the Appeals Council denied review.

Appellant then petitioned for review in the Northern District of Alabama. The district court affirmed the decision of the Secretary, and Carnes appealed to this Court.

At 5 feet, 8½ inches tall and weighing approximately 300 pounds, Carnes suffers from severe obesity. A thyroidectomy was performed on her in January, 1978. Carnes, formerly a licensed practical nurse, has not been employed since 1979.

Carnes argues that she is disabled under Listing 10.10(A) and (C) of 20 C.F.R. Part 404, Subpart P, Appendix 1 (1990). Listing 10.10 outlines the requirements for a finding of disability due to obesity. The listing requires not only that a weight limitation be met, but also that the claimant show that she has one of five additional listed impairments.

Carnes contends that she meets the requirements of 10.10(A), requiring a "[h]istory of pain and limitation of motion in any weight bearing joint or spine (on physical examination) associated with X-ray evidence of arthritis in a weight bearing joint or spine." Carnes also contends that she meets the requirements of 10.10(C), requiring a "[h]istory of congestive heart failure manifested by past evidence of vascular congestion such as hepatomegaly, peripheral or pulmonary edema." While it is undisputed that Carnes meets the weight requirement of Listing 10.10, the ALJ found that Carnes could not offer medical evidence supporting claims under either 10.10(A) or (C).

Carnes has complained of joint pain since at least 1979. She was examined by Dr. Aaron Weisberg, in April, 1980. He found that Carnes suffered no limitation of movement and that X–rays revealed no arthritic changes in her joints. Carnes was, however, experiencing muscle spasms in her right trapezius muscle. Carnes was judged not to be disabled at that time.

In June, 1980, Carnes was examined by Dr. Louis R. Ricca, who felt that her joint pain was related to her obesity. Although at first unsure whether Carnes was disabled, in August, Dr. Ricca concluded that she was not disabled under the Listings.

In March, 1981, Carnes saw Dr. J.J. Humpf, who noted that no extensive arthritis work-up had ever been done on Carnes. Humpf further noted that Carnes could not take anti-arthritis drugs because of her severe anemia. Humpf, though noting the "paucity of physical findings," concluded after examination that Carnes was unable to walk at times, and could not sit for extended periods. He felt there were few jobs at which Carnes could satisfactorily perform.

In December, 1982, minimal degenerative changes of the right knee and spine were revealed on X-rays when Carnes consulted Dr. Ronald Hanson. Limitation of motion in her right knee was also noted.

During the following years, Carnes complained of severe joint pains to a variety of treating physicians. Carnes underwent psychiatric evaluation and treatment and was diagnosed as suffering from post-traumatic stress disorder or an anxiety-related disorder. Carnes also began to complain of chest pain regularly. In October, 1986, she was felt to suffer from exertional angina, controllable by medication. (The name of the examining physician does not appear in the record.) In July, 1988, an abnormal EKG led Dr. Leonard Hays to suggest that decreased left ventricle compliance of undetermined etiology was possibly responsible for the chest pain reported by Carnes.

Also in July, 1988, Carnes was examined by Dr. C.M. DaCosta, an orthopedic surgeon. DaCosta noted that Carnes "certainly cannot move at all, in any plane of her back, hips, or knees." He gave a diagnosis of degenerative arthritis and polyarthralgia. Carnes was examined in August, 1988 by Dr. Pascual Herrera. His diagnosis was bilateral pedal edema, possibly secondary to congestive heart failure, and degenerative joint disease. In September of that year, X-rays taken by Dr. David Azar showed osteoarthritic changes in the right hip, though they were minimal.

Despite the ailments revealed by this medical record, in September, 1988, Dr. Bertram Wiesel performed a Residual Functional Capacity Assessment and found that Carnes was capable of standing, walk-

ing, or sitting up to six hours per day, that her strength was "limited," yet she could lift twenty-five to fifty pounds, but that she had limited use of her right foot. Wiesel concluded that the limitation of motion Carnes suffered was due primarily to her obesity and felt that her X-rays were not "definitive."

At the administrative hearing, Carnes testified that she had been unable to work since 1979, when she resigned from her job as a LPN. She had tried to continue on a part-time basis, but a day's work left her bedridden for days after. She testified that any exertion leaves her short of breath. Her joint pain interferes with her sleep. Although she does household chores, her stamina is poor. She cannot wash a full sink of dishes without resting. She cannot make up a bed without resting. She cannot make up more than one bed a day. She takes bedrest in the middle of the day. She is physically uncomfortable throughout her day. She has chest pains upon exertion and chronic phlebitis in her right leg.

Fain Guthrie, a vocational expert, testified as to sedentary jobs that might allow Carnes to make use of her experience as a nurse. He also testified that, if Carnes had physical problems to the degree of severity that she described in her testimony, she would be unable to perform even sedentary work.

In his decision, the ALJ acknowledged that Carnes has a history of complaints of pain in her hips, back, shoulder and right knee, and of limitation of motion in her legs and neck. Based on X-rays and the reports of examining physicians, however, the ALJ found that Carnes had "minimal degenerative joint changes with no significant restriction of movement of any weight-bearing joint." Further, the ALJ found that the medical evidence was insufficient to support a diagnosis of congestive heart failure. The ALJ concluded that claimant's activities were limited only by her massive obesity.

The ALJ also found that claimant's allegations of severe pain were not credible. The ALJ found no objective cardiac or ar-

thritic condition that could be expected to produce more than minimal pain. The ALJ thus found that Carnes did not meet the requirements of Listing 10.10(A) or (C). Finally, the ALJ judged Carnes to be capable of sedentary work and therefore not entitled to any benefits.

The principal issue before this Court is whether the ALJ applied an incorrect legal standard by requiring evidence of more than minimal arthritis and pain, as well as significant limitation of motion to support a finding of disability under Listing 10.10(A).

## DISCUSSION

■ This Court may reverse the decision of the Secretary only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir.1990). The burden is upon the claimant to demonstrate the existence of a disability as defined by the Social Security Act. *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir.1984).

Social Security regulations require a five-step sequential analysis to determine if a claimant is disabled under the Act. 20 C.F.R. §§ 404.1520, 416.920 (1990). The analysis is terminated after the third step if a claimant proves the existence of a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. At that point, she is presumptively determined to be disabled, without consideration of her age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d).

Diagnosis of a listed impairment is not alone sufficient; the record must contain corroborative medical evidence supported by clinical and laboratory findings. 20 C.F.R. §§ 404.1525, 416.925, 404.1526, 416.-926. *See also Bell v. Bowen*, 796 F.2d 1350, 1353 (11th Cir.1986).

■ Carnes argues that the medical evidence she presented compels a determination that she is disabled within the meaning of Listing 10.10(A). In *Pitzer v. Sullivan*, 908 F.2d 502, 505 (9th Cir.1990), the court held that requiring an obese claimant to prove that her limitation of motion and pain

were, in themselves, disabling or severely limiting could not be justified by the plain language of 10.10(A). Further, the *Pitzer* court held that the claimant did not have to show objective evidence of arthritis so advanced that it would appear to be the cause of her pain and limitation of motion. The court rejected the ALJ's conclusion that Pitzer's claims of pain were not credible because X-rays showed only minimal evidence of arthritis. Evidence of minimal degenerative joint changes was sufficient and the claimant could not be required to show that her symptoms of pain and limitation of motion were caused by arthritis and not just by her obesity.

The ALJ in the instant case found that "claimant has minimal degenerative joint changes with no significant restriction of movement of any weight-bearing joint," and concluded that claimant's activities were limited only by her obesity. These findings parallel those of the ALJ in *Pitzer.* Implicit here is the ALJ's conclusion that claimant was required to prove that her restriction of motion was severely limiting or disabling and that it was caused by arthritis and not just by her obesity.

■ As noted by the court in *Pitzer,* such a requirement is not supported by the plain language of Listing 10.10(A), and is contrary to the regulation's statement that, as long-term obesity usually becomes associated with other disorders, it is "the advent of such disorders [that] is the major cause of impairment." We hold that an obese claimant need present no more than evidence of minimal degenerative joint changes to meet the required showing of "X-ray evidence of arthritis" under Listing 10.10(A). In this case, claimant's medical records reveal X-ray evidence of minimal degenerative changes in her right knee and spine as early as December, 1982, and a history of limitation of motion as early as March, 1981. The ALJ here imposed un-

justifiable new requirements to Listing 10.-10(A) by requiring Carnes to show that her arthritis is more than minimal, and that her limitation of motion is "significant."

■ The same flaw reveals itself in the ALJ's findings regarding the pain suffered by claimant. While acknowledging Carnes' long history of joint pain, the ALJ found that "claimant was not a credible witness concerning the severity of her pain.... The objective records does [sic] not support her complaints of ... significant arthritic pain." The ALJ further stated that "[t]he very mild degenerative changes seen on X-rays have not been severe enough to produce pain of the severity alleged." To require claimant to produce X-ray evidence of more advanced arthritis is, however, to ignore the "profound effect of excessive weight on a weight-bearing joint" which justifies the "relatively modest pathological threshold" imposed by Listing 10.10(A). *Johnson v. Bowen,* 687 F.Supp. 1284, 1307 (W.D.Wis.1988). The Listing requires only a "[h]istory of pain" and does not state what level of pain must be shown. Nor does the Listing require the pain to clearly result only and demonstrably from arthritis rather than from obesity.

■ The credibility of witnesses is for the Secretary to determine, not the courts. *Kelly v. Heckler,* 736 F.2d 631, 632 (11th Cir.1984). The decision of the Secretary here, however, rests not so much on the credibility of the "history of pain" presented by Carnes, as on the adoption of a legal standard improper under Listing 10.10(A).

The record in this case is fully developed and there is no need to remand for additional evidence. Based on the facts adduced below and after application of the proper legal standard, we hold that claimant met the requirements of Listing 10.-10(A) as early as 1982.[1]

---

1. Carnes is entitled to disability insurance benefits if found to have been disabled at any time on or before March 31, 1984, the date her insured period expired. She is entitled to supplemental security income if found to have been disabled at any time prior to the ALJ's decision on May 31, 1989. Because we hold that Carnes

has met the requirements of Listing 10.10(A) and is entitled to an award of disability benefits and supplementary security income, it is unnecessary to consider her contention that she also meets Listing 10.10(C), due to alleged congestive heart failure.

## CONCLUSION

The district court is REVERSED and the case is REMANDED for an award of benefits consistent with this opinion.