United States Court of Appeals

FOR THE EIGHTH CIRCUIT

_____

No. 96-2533

_____

Luebertha Ingram,                    *
                                     *
     Plaintiff-Appellant,            *
                                     *
v.                                   *  Appeal from the United States
                                     *  District Court for the Eastern
Shirley S. Chater, Commissioner      *  District of Arkansas.
of the Social Security               *
Administration,                      *
                                     *
     Defendant-Appellee.             *


_____

Submitted:  December 9, 1996

Filed: February 25, 1997
_____

Before WOLLMAN, BRIGHT, and MURPHY, Circuit Judges.

_____

BRIGHT, Circuit Judge.

     Luebertha Ingram appeals from the district court's order affirming the denial of disability insurance benefits and supplemental security income by the Commissioner of the Social Security Administration (Commissioner).  The district court found substantial evidence to support the determination that Ingram was not disabled and granted the Commissioner's motion for summary judgment.  We affirm in part, reverse in part, and remand for further proceedings.

**FACTUAL BACKGROUND**

Luebertha Ingram filed an application for disability insurance benefits and supplemental security income on March 9, 1993. She asserted an inability to work since 1990 due to back and leg pain and migraine headaches. Ingram, who is in her late forties, was previously employed as a factory worker and, until the onset of her health problems, had a consistent work record.

Three doctors examined Ingram. Dr. D. J. Brewer, a chiropractor, examined Ingram prior to her claim for benefits. At the request of the Commissioner, Ingram saw Dr. Richard L. Hester on April 13, 1993. Ingram also saw Dr. Ramon Lopez on July 27, 1993. Finally, Dr. Hester treated Ingram on at least a dozen occasions after April 13, 1994.

The Commissioner denied Ingram's initial claim for benefits, as well as her claim on reconsideration. Ingram then received a hearing before an administrative law judge (ALJ) and the ALJ affirmed the denial of Ingram's claim. The Appeals Council declined to review the ALJ's determination, thereby making the ALJ's decision the final ruling of the Commissioner. The district court then affirmed the ALJ and Ingram brought this appeal.

## DISCUSSION

"Our review of the denial of benefits is limited to determining whether the decision is supported by substantial evidence on the record as a whole." Groeper v. Sullivan, 932 F.2d 1234, 1237 (8th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Smith v. Shalala, 987 F.2d 1371, 1374 (8th Cir. 1993). "In assessing the substantiality of the evidence, we must consider evidence that detracts from the Secretary's decision as well as evidence that supports it." Id. We may also reverse the Secretary's findings if the Secretary applies an erroneous legal standard. Nettles v. Schweiker, 714 F.2d 833, 835-36 (8th Cir. 1983). Finally, the ALJ "must minimally articulate his reasons for

crediting or rejecting evidence of disability."  Scivally v. Sullivan, 966 F.2d 1070, 1076 (7th Cir. 1992).

To receive disability benefits, Ingram must establish a physical impairment lasting at least one year that prevents her from engaging in any substantial gainful activity.  Smith, 987 F.2d at 1373.  Ingram bears the burden of proof on this issue.  Id.  In determining whether a claimant is disabled, the Commissioner utilizes a five-step sequential evaluation:

> First, the Secretary determines whether the claimant is presently engaged in a `substantial gainful activity.' Second, the Secretary analyzes whether the claimant has a severe impairment--one that significantly limits the claimant's physical or mental ability to perform basic work activities.  Third, the Secretary determines whether the claimant has an impairment that meets or equals an impairment listed in the regulations; if so, the Secretary finds that the claimant is disabled without considering the claimant's age, education, and work experience.  Fourth, the Secretary considers the claimant's residual functional capacity and the physical and mental demands of the claimant's past work to determine whether the claimant can still perform that work.  If the claimant has the residual capacity to perform that work, the Secretary finds that the claimant is not disabled.  Finally, if the Secretary determines that the claimant cannot perform the past work, the Secretary determines whether any substantial gainful activity exists in the national economy which the claimant can perform.

Id. (citations omitted).

There is no dispute that Ingram meets the first two prongs of the test, so only the third and fourth steps are at issue here. Specifically, the ALJ determined that Ingram did not meet the criteria of a listed impairment for purposes of step three.  Add. at 19.  Under step four, the ALJ concluded that Ingram "has the residual functional capacity to perform work-related activities except for work involving lifting and carrying more than 20 pounds . . . . [and her] impairments do not prevent [her] from performing

her past relevant work."  Id.  Ingram contests both findings, as well as the ALJ's credibility determinations.

## I.

Ingram first argues that she is entitled to benefits because she is disabled due to obesity.  A woman is presumed to be disabled due to obesity when she establishes the following medical listing:

> 9.09 *Obesity*: Weight equal to or greater than the values specified in Table . . . II for females (100 percent above desired level), and . . .:
>
> A.  History of pain and limitation of motion in any weight-bearing joint or the lumbosacral spine (on physical examination) associated with findings on medically acceptable imaging techniques of arthritis in the affected joint or lumbosacral spine . . . .

20 C.F.R. pt. 404, subpt. P, app. 1 § 9.09.  We first consider whether Ingram meets the Table II requirements of obesity, then determine whether she meets the criteria outlined under § 9.09A.

## A.

During the ALJ hearing, Ingram testified that she weighed 240 pounds and that her height was 5'5".  These measurements are insufficient for purposes of establishing obesity under Table II, and the ALJ found that "there is no evidence that the claimant has met the height and weight requirements . . . for more than twelve consecutive months . . . ."  Add. at 11.  It is undisputed, however, that every examining doctor placed Ingram's height and weight in the obesity category under Table II and that these reports extend over a twelve-month period.  In addition, no medical evidence suggests Ingram ever failed to meet the requirements of Table II.[1]  Indeed, the district court observed:

---

In 1990, Dr. Brewer found Ingram was 5'0" and weighed 241 pounds.  From April 1993 through November 1994, Dr. Hester found Ingram as 5'3" and weighed between 253 and 267 pounds.  In July

-4-

> Defendant relies on the fact that plaintiff testified
> that she was 5'5" and weighed 240 pounds. However, the
> medical evidence always shows that she was shorter and,
> usually, heavier. The Step 3 determination is based on
> medical evidence. Clearly, the ALJ would have been
> entitled to discount her testimony if she testified that
> she was shorter than medical records indicated; it would
> be unfair to hold plaintiff to the height that she
> testified to when medical records clearly show that her
> testimony was incorrect.

Add. at 28 n.2 (citations omitted). We agree with the district court and conclude that there is no substantial evidence in the record to support the ALJ's determination on this issue. Accordingly, we hold that Ingram meets the requirements of Table II and is obese for purposes of § 9.09.

### B.

Ingram must also satisfy the criteria of § 9.09A which requires a "history of pain and limitation of motion in any weight-bearing joint or the lumbosacral spine (on physical examination) associated with findings on medically acceptable imaging techniques of arthritis in the affected joint or lumbosacral spine." 20 C.F.R. pt. 404, subpt. P, app. 1 § 9.09A. The ALJ rejected this portion of Ingram's claim in rather conclusory fashion. The ALJ stated only that Ingram failed to demonstrate "the other required secondary body system effects for the requisite time period with the required clinical and laboratory findings specified for such a body system by the listed impairment found in Section 9.09. . . ." Add. at 11. The district court affirmed, holding that Ingram did not meet any of the criteria under § 9.09A because she failed to produce x-ray evidence of arthritis and did not establish a history

---

1993, Dr. Lopez found Ingram was 5'4" and weighed 258 pounds.

of pain or limitation of motion.  Ingram challenges these conclusions.[2]

As an initial matter, we must first determine the proper legal standard concerning the amount of pain or limitation of motion necessary under § 9.09A because the ALJ and district court did not do so.  Section 9.09A, by its plain language, requires only a history of pain and limitation of motion, but does not state that a particular level of pain or limitation must be demonstrated. Pitzer v. Sullivan, 908 F.2d 502, 505 (9th Cir. 1990) (requiring claimant to demonstrate "disabling" pain is an "additional

---

The district court made the following comments regarding Ingram's claim under § 9.09A:

> There is no plain X ray, computerized axial tomographic X ray or magnetic resonance imaging which shows arthritis in knees, ankles, hips or lumbosacral spine.
>
> Plaintiff points to Dr. Ramon E. Lopez's X rays of the lumbar spine showing degenerative lumbar disc disease at L5-S1.  Degenerative disc disease is not arthritis, of course.
>
> Plaintiff also points to an April, 1994, examination by Dr. Richard L. Hester. . . . Dr. Hester's notes indicate, "She has some slight pain to palpation of the left knee.  There is some slight pain with range of motion.  It's not particularly swollen or warm to touch, either."
>
> He also recorded laboratory findings: "X-rays of the knee and arms are relatively unremarkable.  There is possibly some slight loss of cartilage in the knee."
>
> It should also be noted that when plaintiff presented to Dr. Hester in April, 1994, with complaints of pain in both knees and hands, she indicated that this had started bothering her just within the last several weeks.
>
> While Dr. Lopez recorded a reduced ranged of motion in the hips and spine, Dr. Hester had examined her three months before and found no limitation of motion.

Add. at 28-29 (citations omitted).

-6-

requirement" that "flies in the face of the plain language" of § 9.09A); Carnes v. Sullivan, 936 F.2d 1215, 1219 (11th Cir. 1991). At least three circuit court of appeals agree that, for purposes of § 9.09A, a claimant need only demonstrate a minimal amount of pain and limitation of motion. See Hughes v. Shalala, 23 F.3d 957, 959 (5th Cir. 1994) ("There is no requirement that the pain be severely limiting [or] that the limitation of motion be marked . . . . The listing requires only limitation of motion . . . ."); Carnes, 936 F.2d at 1219 ("The ALJ . . . imposed unjustifiable new requirements to Listing [9.09A] by requiring Carnes to show that her arthritis is more than minimal, and that her limitation of motion is `significant.'"); Pitzer, 908 F.2d at 505. "Moreover, the regulation also says that long-term obesity is usually associated with other disorders, and it is `the advent of such disorders [that] is the major cause of impairment.'" Pitzer, 908 F.2d at 505 (quoting 20 C.F.R. pt. 404, subpt. P, app. 1); see also Carnes, 936 F.2d at 1215.

Indeed, the amount of x-ray evidence of arthritis necessary for purposes of § 9.09A is identical to that necessary to demonstrate a history of pain and limitation of motion. For example, the Eleventh Circuit holds that "an obese claimant need present no more than evidence of minimal degenerative joint changes to meet the required showing of `X-ray evidence of arthritis . . . .'" Carnes, 936 F.2d at 1219; see also Hughes, 23 F.3d at 959 ("The listing [only] requires . . . any amount of x-ray evidence of arthritis."); Holden v. Shalala, 846 F. Supp. 662, 667-668 (N.D. Ill. 1994) ("minimal" evidence of arthritis in knees of obese claimant sufficient); Johnson v. Bowen, 687 F. Supp. 1284, 1307 (W.D. Wis. 1988) ("[T]he degree of severity of the arthritis necessary to satisfy this section is very low."). "To require [Ingram] to produce X-ray evidence of more advanced arthritis is . . . to ignore the `profound effect of excessive weight on a weight-bearing joint' which justifies the `relatively modest pathological threshold' imposed . . . ." by § 9.09A. Carnes, 936 F.2d at 1219 (quoting Johnson, 687 F. Supp. at 1307).

We adopt the standard articulated by these courts that a claimant must demonstrate only a minimal amount of pain, limitation of motion and x-ray evidence of arthritis for purposes of § 9.09A. Finally, we note that Ingram is not "required to show that her symptoms of pain and limitation of motion were caused by arthritis and not just by her obesity." Carnes, 936 F.2d at 1219; see also Pitzer, 908 F.2d at 505.

With the appropriate legal standards now before us, we consider Ingram's claims in turn. We first determine whether Ingram adequately demonstrates a history of pain, limitation of motion, and x-ray evidence of arthritis in her knees. Next, we consider whether Ingram demonstrates such evidence in her spine. Ingram is entitled to benefits if she makes this showing for either her knees or her spine.

i.

Dr. Hester's initial examination in 1993, without the benefit of an x-ray, resulted in a diagnosis of obesity and probable lumbar muscular strain but detected no limitation of motion in Ingram's knees. Admin. Tr. at 153. Dr. Hester's next physical examination on April 13, 1994, however, included an x-ray of Ingram's knees and Dr. Hester observed that Ingram suffered from "slight pain to palpation to the left knee" and "some slight pain with range of motion." Admin. Tr. at 164. More significantly, Dr. Hester's assessment changed once again when he saw Ingram on July 26, 1994, and determined that Ingram had "mild to moderate pain with range of motion of either knee."[3] Id. at 169. Likewise, on July 23, 1993, Dr. Lopez detailed some restricted motion in Ingram's left knee. Id. at 157.

---

Medical evidence from Dr. Hester dated July 26, 1994 through January 3, 1995 was not submitted to the ALJ, but was made part of the record on appeal to the Appeals Council. Admin. Tr. at 6.

-8-

The Commissioner accurately summarized that Dr. Hester "consistently described [Ingram's history of pain and limitation of motion] as only slight, mild or minimal . . . ." Appellee's Br. at 10. This statement, in light of the standard set forth above, concedes that Ingram demonstrates a sufficient showing of pain and limitation of motion for purposes of § 9.09A. Accordingly, we determine that Ingram meets the pain and limitation of motion requirement of § 9.09A for her knees.

Ingram next argues that x-ray evidence demonstrates some arthritis in her knees.[4] Dr. Lopez took x-rays of Ingram's knees but made no observations regarding arthritis. Dr. Hester, on the other hand, noted there was "possibly some slight loss of cartilage in the knee" and diagnosed Ingram as having "[p]robable early osteoarthritis of both hands and knees." Admin. Tr. at 164. Indeed, within two days Dr. Hester diagnosed osteoarthritis, id. at 163, and ten days later he noted "exacerbat[ed] . . . osteoarthritis." Admin. Tr. at 162. Dr. Hester's diagnosis of osteoarthritis remained essentially unchanged through Ingram's last visit with Dr. Hester on January 3, 1995. Admin. Tr. at 172.

Even though the Commissioner did not challenge this contention in either her brief or during oral argument, we are reluctant to interpret these statements as clearly articulating x-ray evidence of some arthritis in Ingram's knees. In particular, Dr. Hester's qualification that such arthritis is "probable," despite his subsequent diagnosis, gives us pause. Accordingly, we remand to the ALJ for the limited purpose of determining whether Ingram demonstrates some x-ray evidence of arthritis in her knees. If so, she is entitled to benefits.

---

Ingram also argues that the x-ray evidence of Dr. Brewer should be considered. Dr. Brewer is a chiropractor. Under the regulations, chiropractors are not considered "acceptable medical sources." 20 C.F.R. § 404.1513(a)(1995). Therefore, we decline to rely on Dr. Brewer's conclusions.

The record regarding limitation of motion in Ingram's spine is unclear. Indeed, the district court noted a disagreement between Dr. Hester and Dr. Lopez on this point. Add. at 29. The ALJ did not, however, articulate specific findings concerning this evidence. Accordingly, we remand to the ALJ to determine whether Ingram demonstrates a history of pain and limitation of motion in her spine.

Dr. Lopez observed that "X-rays of the lumbar spine revealed a first degree spondylolisthesis at L5-S1 with narrowing of the interspace. There were also degenerative changes and sclerosis of the facet joints at the same level." Admin. Tr. at 156. Because no other doctor x-rayed Ingram's spine, these conclusions of Dr. Lopez remain undisputed. Although the ALJ did not make any specific determinations regarding this x-ray, the district court discounted it because "[d]egenerative disc disease is not arthritis, of course." Add. at 28. Although it appears that degenerative disc disease is, in fact, evidence of arthritis,[5] we remand for the purpose of determining whether Dr. Lopez's x-ray demonstrated "any amount of evidence of arthritis" in Ingram's spine. Hughes, 23 F.3d at 959.

II.

Ingram makes an alternative argument that, even if she fails to meet the criteria of a listed impairment due to obesity, the ALJ's conclusion that she can return to her past relevant work is not substantially supported by the evidence. Ingram has the burden of demonstrating that she is unable to perform her previous work.

---

See, e.g., McGraw-Hill Concise Encyclopedia of Science and Technology 152 (2d ed. 1989) (dividing arthritis into four groups, including "degenerative joint disease").

Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990).  When evaluating whether a claimant can return to past work, the ALJ:

> must specifically set forth the claimant's limitations, both physical and mental, and determine how those limitations affect the claimant's residual functional capacity.  The ALJ must also make explicit findings regarding the actual physical and mental demands of the claimant's past work.  Then, the ALJ should compare the claimant's residual functional capacity with the actual demands of the past work to determine whether the claimant is capable of performing the relevant tasks.  A conclusory determination that a claimant can perform past work without these findings, does not constitute substantial evidence that the claimant is able to return to his past work.

Groeper, 932 F.2d at 1238-39 (citations omitted).  Residual functional capacity "is not the ability merely to lift weights occasionally in a doctor's office; it is the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world."  McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir. 1982) (en banc).

The ALJ briefly discussed Ingram's past job duties:  "[T]he claimant retains a residual functional capacity to perform her past relevant work experience as a machine operator as she described it and as such work is normally performed in the national economy."  Add. at 18.  The ALJ relied on Ingram's description of this work as requiring standing and walking for twelve hours a day in addition to constant bending.  Add. at 18.

Dr. Hester and Dr. Lopez discussed Ingram's capacity to work.  Dr. Hester concluded after his first examination that Ingram could "perform all of the work-related tasks asked of her here in the office . . . ."  Admin. Tr. at 154.  As noted earlier, however, Dr. Hester's assessment appeared to change after subsequent examinations.  Dr. Lopez concluded that Ingram "would not be able to do work activities which require any sitting, standing, bending,

-11-

. . . climbing, stooping, or squatting. She would be also be unable to do any repetitive reaching or handling of objects." Admin. Tr. at 156.

The ALJ apparently favored Dr. Hester's report and, although it is within the ALJ's authority to resolve conflicting opinions, Cabrnoch v. Bowen, 881 F.2d 561, 564 (8th Cir. 1989), we are unable to determine whether the ALJ considered these reports under the correct legal standard. See McCoy, 683 F.2d at 1147. Indeed, in light of Dr. Hester's later reports detailing Ingram's increasing pain and limitation of motion, there is little medical evidence contradicting Dr. Lopez's conclusions that Ingram cannot tolerate prolonged work. Accordingly, we remand this issue to the ALJ for reconsideration in light of the legal standard set forth above.

III.

The ALJ made credibility assessments regarding Ingram's alleged inability to work. An ALJ is permitted to disbelieve subjective complaints if there are inconsistencies in the record. Isom v. Schweiker, 711 F.2d 88, 90 (8th Cir. 1983). These credibility assessments have support in the record.

**CONCLUSION**

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). In light of our discussion, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.