**Charlotte HOLDEN, Plaintiff,**

v.

**Donna E. SHALALA, Secretary of Health and Human Services, Defendant.**

No. 93 C 3436.

United States District Court, N.D. Illinois, E.D.

March 4, 1994.

Peter F. Arden, Robert Balanoff & Associates, Chicago, IL, for plaintiff.

Michele Marion Fox, U.S. Attorney's Office, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

We review here, under 42 U.S.C. § 405(g), the final decision of the Secretary of Health and Human Services (the "Secretary") denying Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") to Plaintiff Charlotte Holden. This case is before us on the parties' cross motions for summary judgment.

Ms. Holden applied for SSI and DIB on September 23, 1991, alleging that she had been disabled since October 12, 1989. Plaintiff's request was denied initially and upon reconsideration. Following the administrative denials of her claim, Plaintiff requested a hearing before an Administrative Law Judge (ALJ). At the hearing Plaintiff amended the onset date of disability from October 12, 1989 to September 23, 1991. The ALJ determined that Plaintiff was not under a disability listed in or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4, and that she had the residual functional capacity to perform her past relevant work. Accordingly, her claim was denied. The Appeals Council denied Plaintiff's request for review of the ALJ's decision. At that point, the decision became a final decision of the Secretary.

Having exhausted her administrative remedies, on June 10, 1993, Plaintiff filed a complaint in this court requesting judicial review of the Secretary's decision. Plaintiff's motion for summary judgment requests reversal of the determination or, in the alternative, remand to the Secretary for further findings. Defendant has made a cross motion for summary judgment, requesting that the Secretary's determination be affirmed. For the reasons stated below, we conclude that Plaintiff's motion for summary judgment must be granted and Defendant's motion for summary judgment denied.

### Standard of Review

■ The Secretary's final decision must be sustained if it is supported by "substantial evidence" and based on the correct legal standard. 42 U.S.C. § 405(g). Thus, we may reverse the decision only if it is not supported by substantial evidence or if the Secretary applied an erroneous legal standard. *Scivally v. Sullivan,* 966 F.2d 1070, 1075 (7th Cir.1992) (citing *Pugh v. Bowen,* 870 F.2d 1271, 1274 (7th Cir.1989)). "Substantial evidence" is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Pitts v. Sullivan,* 923 F.2d 561, 565 (7th Cir.1991) (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). It is more than a scintilla. *Richardson v. Perales,* 402 U.S. at 401, 91 S.Ct. at 1427.

■ An ALJ is required to weigh all the evidence and may not ignore evidence that suggests an opposite conclusion from the one he or she reaches. *Whitney v. Schweiker,* 695 F.2d 784, 788 (7th Cir.1982) (citing *Garcia v. Califano,* 463 F.Supp. 1098, 1105 (N.D.Ill.1979); *Rayborn v. Weinberger,* 398 F.Supp. 1303, 1311 (N.D.Ind.1975)). Furthermore, an ALJ "must minimally articulate his reasons for crediting or rejecting evidence of disability." *Scivally,* 966 F.2d at 1076.

Our role is limited to determining whether the Secretary's decision was supported by adequate evidence. We cannot " 'decide facts anew, reweigh the evidence, or substitute our own judgment for that of the Secretary.' " *Scivally,* 966 F.2d at 1075 (quoting *Clark v. Sullivan,* 891 F.2d 175, 177 (7th Cir.1989)) (quoting *Delgado v. Bowen,* 782 F.2d 79, 82 (7th Cir.1986)). Furthermore,

"[u]nless the ALJ's assessment of the witnesses is patently wrong in view of the cold record before us, it must stand." *Imani v. Heckler*, 797 F.2d 508, 512 (7th Cir.1986); *Edwards v. Sullivan*, 985 F.2d 334, 338 (7th Cir.1993) (ALJ's credibility determination stands so long as there is "some support" in the record). We do not decide if a claimant is disabled. *Ehrhart v. Secretary of Health and Human Serv.*, 969 F.2d 534, 538 (7th Cir.1992) (citing *Stuckey v. Sullivan*, 881 F.2d 506, 508 (7th Cir.1989)).

### Background

Plaintiff was forty-two years old at the time of the hearing. She testified that she was 5′4″ tall. She testified further that she weighed 289 pounds at the time of the hearing, and 264 pounds five months earlier.

### I. Past Relevant Work

Plaintiff was employed in various sedentary, unskilled jobs from April 1977 to October 1989.[1] She worked from April 1977 to March 1984 as a packer. She worked as a bench inspector from October 1984 to October 1987, and as a bench checker from October 1987 to June 1989. Her last job, as a stamper, lasted from June to October 1989. Plaintiff received unemployment compensation from August 1990 through June 1991.

### II. Plaintiff's Testimony

Plaintiff testified at the hearing that her cancer is in remission and that she has not received any treatment for this condition since 1984. She stated that she has swelling of the left side and left arm and that the left side hurts if used constantly for an hour or more. She further testified that she has arthritis in both knees which prevents her from bending and limits her walking to only a little at a time.

She testified that she has constant, severe pain, which she rates as being eight on a scale of one to ten, ten being the worst. Medication does not help the pain, nor does it cause any side effects. Plaintiff admits that in signing the application for unemployment compensation, she represented that she was ready, willing and able to work.

According to Plaintiff, she can walk two blocks. She can lift five to ten pounds. She can sit for four hours and stand for thirty minutes. She does not engage in any recreational activities. She does not drive. She can feed herself, dress herself, and cook. At the hearing, Plaintiff testified that she does not do any cleaning, although she stated in her application for benefits that she did her own housework. Plaintiff reported difficulty concentrating and sleeping. Plaintiff testified that she has asthma but has never been hospitalized nor required emergency room treatment.

### III. Medical Evidence

The medical evidence reveals that Plaintiff underwent a modified radical mastectomy of the left breast in April 1984, followed by chemotherapy. The only work-related restriction imposed on Plaintiff was that she not engage in an occupation which puts excessive strain on her left arm.

The record includes a report from Dr. Mamie Long, a consultative internist who examined Plaintiff in October 1991 at the request of the state agency. The report states that Plaintiff has pain and stiffness in her shoulders that limits the range of motion in her shoulders. The report also indicates that Plaintiff has stiffness and medial edema in her left knee, and a limited range of motion in that joint, and pain, stiffness, and limited range of motion in her lumbosacral spine. Dr. Long indicated in the report that Plaintiff has full strength and normal dexterity in both hands and no loss of strength in the lower extremities. An x-ray of the left shoulder taken shortly thereafter shows slight arthritic sclerosis, as did an x-ray of the left knee. Dr. Long performed pulmonary function studies upon Plaintiff's report of asthma and found them to be normal. At the time of Dr. Long's examination, Plaintiff's height was 5′4″ and her weight was 255 pounds.

---

1. Plaintiff underwent a modified radical mastectomy of the left breast in April 1984. Her subsequent employers apparently made accommodations for the pain and swelling that persisted after the surgery. Plaintiff was laid off from each of the jobs discussed herein.

Plaintiff also submitted copies of two physical examinations performed by Dr. Diaz, her treating physician. The report dated February 2, 1992, indicates that Plaintiff was 5'4½" tall and weighed 264 pounds and that Plaintiff had pain in both knees and in her right elbow. In an undated report, Dr. Diaz indicated that Plaintiff had pain in both knees.

Dr. Diaz completed a residual functional ability assessment of Plaintiff in March 1992. In that report, Dr. Diaz stated that Plaintiff could lift ten pounds occasionally and five pounds frequently, limited because of pain in the right elbow; and could stand or walk twenty-five to thirty minutes without interruption or a total of two hours in an eight-hour day, limited because of pain in both knees. Dr. Diaz further stated that Plaintiff's ability to sit was unaffected, that she could occasionally climb, balance, stoop, crouch, kneel, or crawl, but that Plaintiff is limited in pushing and pulling because of pain in the right elbow. Dr. Diaz advised against working in temperature extremes because Ms. Holden's pain could be due to arthritis.

An x-ray report dated April 28, 1992, shows a normal cervical spine, but minimal degenerative changes of the lumbar spine with normal intervertebral disc spaces, and no evidence of fracture or bony destruction. Medical records from Presbyterian St. Lukes Hospital covering the period of April 1984 through June 1987 show weights of 244 pounds to 275 pounds.[2]

## IV. *The ALJ's Determination*

The ALJ found that although Plaintiff suffers severe impairments, in particular multiple arthralgias, mild asthma, and obesity, these impairments, considered both singly and in combination with each other, do not meet or equal the required level of severity for a finding of disability.

The ALJ found that Plaintiff's impairment does not meet or equal the impairment in listing 10.10 for obesity. He found that Plaintiff meets the weight requirement in listing 10.10 of 258 pounds based on her testimony that her weight was 289 pounds at the time of the hearing and 264 pounds six months earlier. He found, however, that Plaintiff fails to meet the second part of listing 10.10, set out in subsection 10.10, concluding that there was no x-ray evidence of arthritis, or evidence of hypertension, congestive heart failure, chronic venous insufficiency or abnormal pulmonary function testing.[3] The ALJ found that Dr. Diaz's opinion with regard to Plaintiff's residual functional capacity was controlling and rejected the assessment completed by a Dr. Kudirka, the State Agency medical consultant.

### *Applicable Law*

A claimant is eligible for disability income benefits if the claimant is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's physical or mental impairments must be of such severity

---

2. The record shows Plaintiff's weights during that period as follows: 4/84, 252 lbs.; 6/84, 246 lbs.; 7/84, 259 lbs.; 8/84, 254 lbs.; 10/84, 260 lbs.; 12/84, 270 lbs.; 1/85, 267 lbs.; 3/85, 273 lbs.; 5/85, 261 lbs.; 7/85, 248 lbs.; 9/85, 254 lbs.; 11/85, 244 lbs.; 3/86, 259 lbs.; 5/86, 275 lbs.; 8/86, 262 lbs.; 12/86, 247 lbs.; 2/87, 251 lbs.; 6/87, 245 lbs.

3. The ALJ also found that Plaintiff did not meet the requirements of other listed impairments, namely, recurrent carcinoma, asthma, hypertension or mental impairment.

After finding that Plaintiff's impairment did not meet or equal any of the listed impairments, the ALJ considered whether Plaintiff's residual functional capacity was sufficient for Plaintiff to perform her relevant past work or any other job existing in significant numbers in the national economy. The ALJ found, after reviewing the evidence as a whole, that Plaintiff's testimony with regard to constant severe pain was not credible. He found, based on the assessment of Plaintiff's treating physician, that Plaintiff has the capacity to perform sedentary work, as defined by the Social Security Act. As Plaintiff's past relevant work was sedentary work, he found that she was not disabled. Because we conclude that there was not substantial evidence in the record to support the ALJ's determination that Plaintiff was not disabled under listing 10.10, we do not consider whether the ALJ's determination that Plaintiff is capable of performing her past relevant work is supported by the evidence.

that "he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether ... he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A).

The claimant bears the initial burden of showing that she suffers from a "severe impairment" that prevents her from performing her past relevant work. Once she has done so, the burden shifts to the Secretary to demonstrate that the claimant has "sufficient 'residual function capacity' to perform other work available in the national economy." *Walker v. Bowen*, 834 F.2d 635, 640 & n. 3 (7th Cir.1987) (citing *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir.1984)); *see* 20 C.F.R. § 404.1520(e), (f).

In order to meet the burden of establishing disability, a claimant must "present medical evidence of an impairment that results from 'anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical ... impairment must be established by medical findings consisting of signs, symptoms, and laboratory findings, not only [claimant's] own statement of symptoms.'" *Edwards v. Sullivan*, 985 F.2d 334, 337 (7th Cir.1993) (quoting 20 C.F.R. §§ 416.908, 416.927, 416.928 (1991)).

A five-step analysis is used by the ALJ to determine whether the claimant is under a disability. The Seventh Circuit has described the steps in the analysis as follows:

> The first inquiry under the sequence concerns whether a claimant is currently engaged in substantial gainful employment. If it is found that he is, the claim is denied without reference to the other steps in the sequence. If he is not, the second inquiry is whether the claimant has a "severe" impairment. If he does not, the claim is denied. If a severe impairment is present, the third inquiry is whether such impairment meets or equals one of the impairments listed under Appendix I to Subpart P of Administrative Regulation No. 4. If it does, the claim is approved. If it does not, the fourth inquiry is whether the claimant's impairments prevent him from performing his past relevant work. If he is found to be capable of returning to his past relevant work, the claim is denied. If he is not found to be so capable, the fifth and final inquiry is whether the claimant is able to perform other forms of substantial gainful activity, considering his age, education, and prior work experience. If he is not the claim is approved.

*Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir.1981) (quoting 43 Fed.Reg. 55.349 (1978)). Thus, an affirmative answer to inquiry number three leads to a finding of disability and the issue of the claimant's ability to perform her past work or any other work need not be addressed. *Bauzo v. Bowen*, 803 F.2d 917, 920 n. 1 (7th Cir.1986) (citing *Zalewski v. Heckler*, 760 F.2d 160, 162 n. 2 (7th Cir. 1985)).

A claimant may be disabled as a result of his or her obesity. Under listing 10.10(A) a claimant is eligible for DIB if she meets the following criteria:

> Weight equal to or greater than the values specified in Table I for males, Table II for females (100 percent above desired level) and one of the following:
>
> A. History of pain and limitation of motion in any weight bearing joint or spine (on physical examination) associated with X-ray evidence of arthritis in a weight bearing joint or spine.

20. C.F.R. Part 404, Subpart P, Appendix 1.

### Analysis

Our review here focuses on the ALJ's determination in the third step of the above analysis that Plaintiff's impairment does not meet or equal listing 10.10 for obesity-based disability. Plaintiff challenges the ALJ's finding with respect to subsection 10.10(A), the Secretary challenges the finding with respect to the weight requirement. After reviewing the record as a whole, we find that there is substantial evidence in the record supporting the ALJ's finding that Plaintiff satisfies the weight requirement. We find, however, that the ALJ's determination that there is no x-ray evidence of arthritic changes in Plaintiff's joints, and his conse-

quent determination that Plaintiff is not disabled under listing 10.10 are not supported by substantial evidence.

### I. *Plaintiff's Motion for Summary Judgment*

■ Plaintiff argues that she is indeed disabled under Listing 10.10 as a result of her obesity. She challenges the ALJ's finding that she does not meet the criteria set out in subsection 10.10(A).

According to the ALJ,

[t]he claimant is obese, weighing 255 pounds at a height of 64 inches in October 1991 (Exhibit 15). At the hearing, she said she has gained and now weighs 289 pounds. Listing 10.10 provides that 100 percent above the desired weight for an individual who is 64 inches tall would be 258 pounds. However, the second part of Listing 10.10 is not met. The claimant complains of pain in the knees, but *there is no X-ray evidence of arthritis in a weight-bearing joint or spine.*

(R. 12) (emphasis added). Thus, the ALJ concluded that although Plaintiff satisfied the first part of Listing 10.10, she did not satisfy the second.

With regard to subsection 10.10(A)'s requirements, the ALJ noted:

The claimant testified that she has arthritis in both knees which prevents her from bending and limits her walking to only a little at a time. She complains of *constant, severe pain,* which she rates as being 8 on a scale of 1 to 10, 10 being the worst.

(R. 9, 10) (emphasis added). He acknowledged the reports of both Plaintiff's treating physician Dr. Diaz and the consultative internist Dr. Long, noting in his decision that

Dr. Long, a consultative internist who examined the claimant in October 1991, found *limitation of motion in both shoulders and both knees*.... There was minimal *limitation of motion of the lumbosa-*

cral spine, without spasms or pain on straight leg raising.

. . . .

Dr. Diaz, on March 23, 1992, completed a Medical Assessment of Ability to do Work–Related Activities. He stated she could stand or walk 25 to 30 minutes without interruption or a total of two hours in an eight-hour day; *limited because of pain in both knees.* In the undated report, Dr. Diaz reported that the claimant had *pains in both knees.*

(R. 10–11) (emphasis added).

Although the ALJ found Plaintiff's own testimony regarding her pain not credible, there is no suggestion that he did not credit the reports from Drs. Long and Diaz. He also does not point to other objective medical evidence in the record that he concludes contradicts the reports provided by Drs. Diaz and Long. Rather, it appears that his finding that Plaintiff's impairment does not meet the requirements of 10.10(A) is based on his determination that there is no x-ray evidence of arthritis in Plaintiff's weight-bearing joints.

Plaintiff submitted, and the ALJ acknowledged, two x-ray reports which tend to show that she has arthritic changes in her spine and left knee. As the ALJ noted:

An X-ray of the left knee showed minimal narrowing of the medial joint space with slight *arthritic sclerosis* and sharpening at the articular margins....

An X-ray of the lumbosacral spine performed April 28, 1992, revealed minimal *degenerative changes,* with normal disc spacing.

(R. 10–11) (emphasis added). Thus, the ALJ's decision must have been based on something other than the complete lack of x-ray evidence.[4] It appears that the ALJ either found that the x-rays did not show arthritis in Plaintiff's weight bearing joints, or that the x-rays did not show severe enough arthritis to cause Plaintiff's alleged pain and motion limitations.

---

**4.** The ALJ disregarded the X-ray reports without stating a reason. This is improper, *Scivally,* 966 F.2d at 1076, and makes review by this Court more difficult. As the ALJ's decision does not clearly delineate the reason for his finding, we

have considered the two possible explanations. We see no reason to remand the matter to the Secretary as the ALJ's determination is improper under either possible basis, as we discuss below.

After reviewing the evidence, we conclude that the ALJ's finding that "there is no X-ray evidence of arthritis in a weight-bearing joint or spine" is improper regardless of the basis. There is no evidence in the record controverting the x-rays provided by Plaintiff, hence the ALJ could not properly choose to ignore the proferred x-ray results. *See Scivally v. Sullivan*, 966 F.2d 1070, 1076 n. 5 (7th Cir.1992) (ALJ improperly disregarded doctors' diagnoses when no medical evidence in record contradicted diagnoses).

The ALJ also was not entitled to discount the x-rays merely because he concluded that he indicated arthritis could not produce the alleged pain or motion limitations. Listing 10.10(A) requires only a "[h]istory of pain" and "limitation of motion ... associated with X-ray evidence of arthritis in a weight-bearing joint or spine." Furthermore, "[t]he regulation does not say what level of pain must be established (such as 'severely limiting' or 'disabling' as the Secretary suggests), but only that there must be a 'history of pain.' Similarly, the regulation does not say that the arthritis must 'cause' the limitation of motion, but simply that it must be associated with it." *Pitzer v. Sullivan*, 908 F.2d 502, 505 (9th Cir.1990) (citing 20 C.F.R. Part 404, Subpt. P, App. 1). The uncontroverted evidence provided by Drs. Diaz and Long shows that Plaintiff had a history of pain and limitation of motion. The pain and motion limitation was in Plaintiff's knee and lumbosacral spine, the locations—according to the x-rays—of Plaintiff's arthritis. As we read Listing 10.10(A), this is all that is necessary.

Nor was the ALJ entitled to discount the x-rays on the basis that they show only "minimal" degenerative changes. The threshold set by the regulations is not high. "An obese claimant need present no more than evidence of minimal degenerative joint changes to meet the required showing of "X-ray evidence of arthritis" under Listing 10.10(A). *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir.1991). That is what the x-rays showed, and the ALJ was not entitled to require more. We conclude that there is no evidence

supporting the ALJ's finding that there was no x-ray evidence of arthritis.

We further conclude that there is not substantial evidence supporting the ALJ's determination that Plaintiff's impairment does not meet the requirements of the second part of Listing 10.10.[5] The reports of both Dr. Diaz and Dr. Long indicate that Plaintiff has a history of pain and limitation of motion in the joints that exhibit x-ray evidence of arthritic degeneration. Our review of the record reveals no contradictory evidence. Thus, there is no genuine issue of fact with regard to whether Plaintiff's impairment meets the requirements of subsection 10.10(A). In light of our conclusion with regard to the sufficiency of the x-ray evidence of arthritis in Plaintiff's weight bearing joints and spine, we therefore cannot affirm the ALJ's determination.

## II. Defendant's Motion for Summary Judgment

■ Defendant first argues that the ALJ's determination that Plaintiff meets the first requirement of listing 10.10, weight 100 percent greater than the tabled weight, is not supported by substantial evidence. Defendant argues in the alternative that even if Plaintiff weighed enough to meet the statutory criterion, she did so for only nine months—less than the twelve-month period of disability required by 42 U.S.C. § 423(d)(1)(A). After reviewing the entire record, we conclude that there was substantial evidence from which the ALJ could have determined that Plaintiff was obese within the meaning of listing 10.10 and that the duration of her impairment satisfied the statutory requirement.

The plain language of section 423 indicates that a claimant's disability need not have existed continuously for twelve months prior to a finding that such claimant has a permanent impairment. Section 423 states that a claimant is eligible for disability income benefits if the claimant is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result

---

5. Since we conclude that the ALJ's finding with respect to Listing 10.10 is not supported by sub-stantial evidence, we do not address the balance of Plaintiff's argument.

in death or that has lasted *or can be expected to last* for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added). If Congress had not intended that the twelve-month requirement could be met prospectively, the language "or can be expected to last" would not have been used. Thus, we may affirm the ALJ's finding so long as there is substantial evidence that Plaintiff's weight either met the threshold for twelve months or is expected to meet the threshold for at least twelve months.

There is ample evidence in the record from which the ALJ reasonably could conclude that Plaintiff's obesity could be expected to last for a continuous period of twelve months.[6] Of the eighteen recorded weights noted by her oncologist Dr. Bonomi between April 1984 and June 1987, nine of them were greater than 258 pounds. According to the record, those weights were recorded while Plaintiff was undergoing chemotherapy and frequently complaining of nausea and vomiting. On October 19, 1991, Dr. Long recorded Plaintiff's weight as 255 pounds, three pounds short of the weight required by listing 10.10 for her height. On February 19, 1992, however, Plaintiff weighed 264 pounds. At the hearing, Plaintiff testified that she weighed 289 pounds and that five months previously she weighed 264 pounds. The ALJ apparently found Plaintiff's testimony about her weight to be credible, a finding we will not disturb because we see nothing in the record to suggest that it is patently wrong.

We conclude that there is substantial evidence in the record supporting the ALJ's determination. Almost all the below-threshold weights were prior to June 1987, i.e., over four years prior to the alleged onset of her disability. The evidence shows that Plaintiff met the weight criteria from February 1992 until the date of the hearing, a period of nine months. Her weight trended upward substantially during that period. The ALJ could reasonably conclude that her obesity would continue for at least twelve months.

The fact that Plaintiff's weight did not exceed the threshold at all times does not render the ALJ's determination invalid.

Nothing in the regulations indicates that a claimant's weight must exceed the threshold on every occasion. Furthermore, although we have not been able to locate any case law on this point involving obesity-related disability, courts addressing the continuity issue with respect to blood pressure-based disability and mental illness-based disability have concluded that not all measurements during the requisite period must exceed the threshold. *Honeysucker v. Bowen,* 649 F.Supp. 1155 (N.D.Ill.1986); *Johnson v. Califano,* 572 F.2d 186 (8th Cir.1978); *Dennis v. Heckler,* 756 F.2d 971 (3rd Cir.1985). Plaintiff's weight, even while undergoing chemotherapy, exceeded the threshold half the time. On those occasions where it did not, it tended to be close to the threshold. Plaintiff's weight is tending upward significantly. This is enough under the applicable regulations given the limited scope of our review.

### *Conclusion*

For the reasons stated above, we conclude that the ALJ's finding with respect to the first, weight-based, criteria of Listing 10.10 is supported by substantial evidence. Consequently, Defendant Secretary's motion for summary judgment is denied. We also conclude that the ALJ's finding that the second criteria of Listing 10.10 is not met is *not* supported by substantial evidence. We conclude as well that the ALJ's finding that Plaintiff is not disabled is not adequately supported and Plaintiff's motion for summary judgment is granted.

The question remains whether we should reverse the Secretary's decision and remand for an award of benefits or simply remand for further administrative proceedings. Section 405(g) gives us the authority to affirm, modify, or reverse the Secretary's decision "with or without remanding the cause for a rehearing." 42 U.S.C. § 402(g) (1993). We need not remand " 'when no useful purpose would be served by further administrative proceedings, or when the record has been fully developed and there is not sufficient evidence to support the ALJ's conclusion.' " *Rodriquez v. Bowen,* 876 F.2d 759, 763 (9th

---

**6.** As Plaintiff is 64 inches tall, a weight of 258 pounds is 100 percent above her desired weight.

670

Cir.1989) (citations omitted) (quoted in *Grindle v. Sullivan*, 774 F.Supp. 1501, 1514 (N.D.Ill.1991)). *Compare Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir.1993) (holding that remand was necessary because "[t]he ALJ failed to evaluate Campbell's RFC and to make the determinations required ..." and "the record is not so clear that we can award or deny benefits on appeal"). Benefits should also be awarded when " 'the ALJ fails to point to clear and convincing reasons for rejecting the conclusions of the treating physician, or provide specific, legitimate reasons based on evidence for disregarding that conclusion....' " *Boyes v. Sullivan*, 901 F.2d 717, 722–23 (9th Cir.1989) (citations omitted) (quoted in *Grindle*, 774 F.Supp. at 1513–14).

There is no reason to remand this matter for further proceedings. The record is fully developed, containing as it does x-rays of Plaintiff's weight-bearing joints and spine, objective medical evidence addressing Plaintiff's motion limitations and history of pain in her weight-bearing joints and/or spine, and evidence of Plaintiff's weight. The ALJ's finding that Plaintiff met the weight requirement is supported by substantial evidence in the record. Thus, there would be no useful purpose in remanding to consider this portion of the disability test.

There is no purpose in remanding for an evaluation of the 10.10(A) requirements, either. The uncontroverted evidence in the record provides no basis on which the ALJ on remand could find that Plaintiff's condition does not meet the requirements of subsection 10.10(A). As discussed above, the x-rays show evidence of arthritic degeneration in Plaintiff's knee and spine. The record also contains reports of two different physicians on four different occasions that indicate variously that Plaintiff has limitation of motion in one of her knees and in her lumbosacral spine, and experiences pain in her knees and spine. The ALJ did not point to specific evidence or provide any reasons why the reports of Drs. Long and Diaz regarding Plaintiff's pain and motion limitations should be disregarded. In fact, the ALJ specifically gave controlling weight to Dr. Diaz's residual functional analysis. Furthermore, the reports are consistent with each other and at the very least not inconsistent with the x-ray results. A remand would serve no useful purpose as the evidence permits of only one result. *See Grindle*, 774 F.Supp. at 1514 (finding that no substantial evidence contradicted the conclusions of two treating physicians that plaintiff was disabled, and concluding that there was no genuine issue of material fact regarding plaintiff's disability and that no useful purpose would be served by a remand to reach an "inevitable result").

The decision of the Secretary is hereby reversed. The matter is remanded for the sole purpose of determining the period of disability and the payment of benefits.