[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14924
Non-Argument Calendar
_____

D.C. Docket No. 8:12-cv-01601-MSS-TGW

JAMES W. HIMES,

                                                                        Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

                                                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(September 26, 2014)

Before TJOFLAT, MARCUS and JORDAN, Circuit Judges.

PER CURIAM:

    James Himes, proceeding pro se, appeals the district court's order affirming

the Social Security Administration's denial of his application for disability

insurance benefits and supplemental security income.  On appeal, Himes argues

that: (1) the administrative law judge ("ALJ") erred at steps two and three in the sequential review process; and (2) the ALJ's residual functional capacity ("RFC") assessment is not supported by substantial evidence, so the ALJ also erred at steps four and five. After thorough review, we vacate and remand.[1]

In reviewing an ALJ decision, we assess whether the ALJ applied proper legal standards and whether the factual findings are supported by substantial evidence. Crawford, 363 F.3d at 1158; see Ingram v. Comm'r of Soc. Sec., 496 F.3d 1253, 1260 (11th Cir. 2007) (noting that this review is de novo). Substantial evidence is "more than a scintilla" and is relevant evidence that a reasonable

---

[1]    We reject the Commissioner's claim that Himes abandoned certain arguments. It is true that issues not raised on appeal are ordinarily deemed abandoned. Allstate Ins. Co. v. Swann, 27 F.3d 1539, 1542 (11th Cir. 1994). Nor do we address issues not raised in the district court. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1161 (11th Cir. 2004); see also Kelley v. Apfel, 185 F.3d 1211, 1215 (11th Cir. 1999). However, the district court has discretion to accept an argument first raised in an objection to a magistrate judge's report and recommendation ("R&R"). See Stephens v. Tolbert, 471 F.3d 1173, 1176–77 (11th Cir. 2006). Moreover, even if a disability benefits claimant fails to object to an R&R, we may still review the magistrate judge's legal conclusion as to whether substantial evidence supports the ALJ's findings. See Hardin v. Wainwright, 678 F.2d 589, 591 (5th Cir. Unit B 1982); see also Stein v. Reynolds Sec., Inc., 667 F.2d 33, 34 (11th Cir. 1982) (adopting as binding all decisions issued by a Unit B panel of the former Fifth Circuit); cf. Holley v. Seminole Cnty. Sch. Dist., 755 F.2d 1492, 1499 n.5 (11th Cir. 1985) ("[T]he substantial evidence inquiry, though a factual review of a sort, is a question of law for the court which can be made upon a review of the administrative record.").

Here, Himes has not abandoned his arguments on appeal regarding the ALJ's RFC and credibility determination because he adequately raised them in his initial brief. As for the Commissioner's claim that Himes abandoned these claims by failing to comply with the magistrate judge's order to fully develop his arguments, this is more properly seen as an argument that Himes did not raise his claims in the district court. But Himes did not fail to raise these claims before the district court initially, and, even if he did not provide sufficient argument in his initial memorandum, he adequately raised these issues in his pro se objections to the magistrate judge's R&R. Further, Himes did not waive the arguments he raised for the first time in an objection to the magistrate judge's R&R. The district court chose to review these arguments on their merits, and there is no indication that the district court abused its discretion in doing so. Accordingly, we will review all of Himes's contentions on appeal.

person would accept as adequate to support a conclusion that a claimant is or is not entitled to benefits. Crawford, 363 F.3d at 1158. We will not reweigh the evidence and decide facts anew, and we defer to the ALJ's decision if it is supported by substantial evidence even if the evidence preponderates against it. See Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). However, we give no deference to the ALJ's legal conclusions, which we review with "close scrutiny." Ingram, 496 F.3d at 1260 (quotation omitted). But even if an ALJ made a factual error or applied an improper legal standard, we may find the errors harmless in light of the whole case. See Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983).

First, we are unpersuaded by Himes's claim that the ALJ erred at steps two and three in the sequential review process by, among other things, ignoring certain medical evidence, not considering all of his impairments, and not recognizing episodes of decompensation. The steps about which Himes complains are part of a five-step process the Commissioner uses to determine whether a claimant is disabled, and include an analysis of whether the claimant: (1) is not engaged in substantial gainful activity; (2) has a severe and medically determinable impairment; (3) has an impairment, or combination thereof, that meets or equals a Listing, and meets the duration requirement; (4) can perform his past relevant work, in light of his RFC; and (5) can make an adjustment to other work, in light of his RFC, age, education, and work experience. Winschel v. Comm'r of Soc. Sec.,

3

631 F.3d 1176, 1178 (11th Cir. 2011); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of showing he is disabled. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); 20 C.F.R. §§ 404.1512(a), (c), 416.912(a), (c).

Step two is a threshold inquiry that "allows only claims based on the most trivial impairments to be rejected." McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986). It "acts as a filter" to weed out claims that show no substantial impairments at all. Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987). The finding of any severe impairment or a severe combination of impairments satisfies step two because once the ALJ proceeds to step three and assesses the RFC, he is required to consider all of a claimant's impairments, severe or not. Id.; Bowen v. Heckler, 748 F.2d 629, 634–35 (11th Cir. 1984); see 42 U.S.C. § 423(d)(2)(B).

At step three, a claimant is conclusively presumed to be disabled if he meets or equals the level of severity of a listed impairment, or Listing. Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997); 20 C.F.R. §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d); id. §§ 404.1526, 416.926 (discussing medical equivalency). To meet a Listing, the claimant must meet all of the specified medical criteria, and an impairment that fails to do so does not qualify no matter how severely it meets some of the criteria. Sullivan v. Zebley, 493 U.S. 521, 530 (1990). The claimant bears the burden of proving he meets a Listing. Barron v. Sullivan, 924 F.2d 227, 229 (11th Cir. 1991). A claimant must have a diagnosis

4

included in the Listings and provide medical reports showing that his conditions meet the specific criteria of the Listings and the duration requirement. Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002). However, an impairment cannot meet the criteria of a Listing based only on a diagnosis. Carnes v. Sullivan, 936 F.2d 1216, 1218 (11th Cir. 1991); 20 C.F.R. §§ 404.1525(d), 416.925(d).

Medical opinions are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment[s]." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). There are three tiers of medical opinion sources: (1) treating physicians; (2) nontreating, examining physicians; and (3) nontreating, nonexamining physicians. See id. §§ 404.1527(c)(1)–(2), 416.927(c)(1)–(2). Nurse practitioners are not acceptable medical sources, so their opinions are not "medical opinions" and "cannot establish the existence of an impairment," although their opinions may be used to show the severity of an impairment and how it affects a claimant's ability to work. See Crawford, 363 F.3d at 1160; 20 C.F.R. §§ 404.1513(a), (d)(1), 416.913(a), (d)(1).

To meet Listing 12.04 for affective disorders, a claimant must meet the requirements in both paragraphs A and B, or meet the requirements in paragraph C. 20 C.F.R. pt. 404, subpt. P, app. 1, 12.04. Paragraph A requires "[m]edically documented persistence, either continuous or intermittent," of a qualifying depressive syndrome, manic syndrome, or bipolar syndrome. See id. at

12.04(A)(1)–(3).  Paragraph B requires that the medically documented persistent syndrome result in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration.  Id. at 12.04(B).  "Marked" means "more than moderate but less than extreme," and occurs when the degree of limitation seriously interferes with a claimant's ability to function "independently, appropriately, effectively, and on a sustained basis."  Id. at 12.00(C)(1)–(3); see 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4) (describing a five-point scale used to rate the degree of limitation: none, mild, moderate, marked, and extreme).  Episodes of decompensation are "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace."  20 C.F.R. pt. 404, subpt. P, app. 1, 12.00(C)(4).  To have a "repeated" episode of "extended duration," a claimant must have three episodes within one year, or an average of once every four months, each lasting at least two weeks.  Id.

Paragraph C requires a "[m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently

6

attenuated by medication or psychosocial support," in addition to one of the following: (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease process resulting in "such marginal adjustment" that it is predicted that "even a minimal increase in mental demands or change in the environment" would cause decompensation; or (3) a current history of at least one years' "inability to function outside a highly supportive living arrangement," and an indication that this arrangement needs to be continued. Id. at 12.04(C).

Here, the ALJ decided at step two that Himes had the following severe mental impairments: depression, anxiety, and personality disorder. Even assuming that the ALJ erred at step two, any error is harmless because the ALJ's conclusion that Himes had any "severe" impairments advanced his claim to step three, where the ALJ had to consider all of Himes's impairments whether severe or not.

At step three, the ALJ determined that Himes did not meet or medically equal a Listing and was thus not conclusively presumed to be disabled. While Himes notes that the ALJ did not consider the Paragraph A criteria for Listing 12.04, the error, if any, was harmless because Himes had to show he met the criteria in both Paragraphs A and B, and substantial evidence supports the ALJ's decision that Himes did not satisfy Paragraph B. Among other things, the medical evidence does not show that he had marked limitations in activities of daily living, maintaining social functioning, or maintaining concentration, persistence, or pace.

7

Rather, medical records indicate that Himes can independently care for his hygiene and grooming, and two medical assessments reveal that Himes had no problems performing activities of daily living -- which together provide substantial evidence supporting the ALJ's decision that Himes had mild restrictions in activities of daily living and moderate difficulties in social functioning.  To the extent Himes relies on a nurse practitioner's opinion to establish a diagnosis of bipolar disorder, she is not a medically acceptable source, and, moreover, even if her opinion did establish a diagnosis of bipolar condition, a diagnosis alone is insufficient to meet a Listing.

The ALJ's decision that Himes had moderate limitations in maintaining concentration, persistence, or pace is further supported by medical records noting that Himes had normal or good concentration, was attentive, and displayed a good memory.  But even if this determination was in error, any error was harmless because Himes had to meet two of the four criteria in Paragraph B, and, substantial evidence supports the ALJ's finding that Himes did not have the requisite episodes of decompensation that were of extended duration.  Indeed, Hines cannot rely on the first of the three alleged episodes -- when he lost custody of his daughter in 2006 -- because it does not help establish that he had "repeated" episodes (meaning three episodes within one year or on average once every four months).  This event occurred before his alleged onset date of disability and approximately three years before his next alleged episode of decompensation.  Accordingly, Himes has not

met his burden to show that he suffered from repeated episodes of decompensation.

Substantial evidence also supports the ALJ's conclusion that Himes did not satisfy any of the three conditions required for Paragraph C, and thus did not meet or medically equal Listing 12.04. As for the first condition, we've already noted that Himes did not show the required episodes of decompensation. As for the second condition, medical opinions and evidence indicating that Himes had mild or moderate limitations in activities of daily living, social functioning, and maintaining concentration, persistence, or pace support the ALJ's conclusion that a minimal increase in mental demands or a change in the environment would not predictably cause Himes to decompensate. As for the third condition, the record indicates that Himes was not completely unable to function outside a highly supportive living arrangement, since he lived on his own with his girlfriend and daughter and adequately participated in daily living activities. The ALJ's decision at step three of the sequential analysis is thus supported by substantial evidence.

Nevertheless, we agree with Himes the ALJ erred at steps four and five of the sequential process. After step three, the ALJ must determine a claimant's RFC, and whether, in light of his RFC, a claimant (4) can perform his past relevant work; or if not, (5) can make an adjustment to other work, in light of his RFC, age, education, and work experience. Winschel, 631 F.3d at 1178; 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A claimant's RFC is an assessment, based upon all

relevant evidence, of the claimant's ability to do work despite his impairments. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 416.945(a)(1). The ALJ considers all of the evidence in the record in determining the claimant's RFC. Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). At step four, the claimant bears the burden of proving that he is unable to perform his past relevant work in light of his RFC, and if he meets that burden, the Commissioner bears the burden of determining whether there is other work available at the fifth step of the sequential evaluation process. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).

The ALJ has a duty to make clear the weight accorded to each item of evidence and the reasons for those decisions, so as to enable a reviewing court to determine whether the ultimate decision is based on substantial evidence. Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981). In assessing medical evidence, the ALJ must "state with particularity the weight he gave the different medical opinions and the reasons therefor." Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987). It is insufficient for an ALJ to state that he considered all of the evidence when he does not indicate what weight was accorded to the evidence considered. Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985); see Cowart, 662 F.2d at 735 ("In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is

10

rational and supported by substantial evidence."). Even if it is possible that the ALJ considered and rejected medical opinions, "without clearly articulated grounds for such a rejection, we cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence." Winschel, 631 F.3d at 1179.

A treating physician's testimony must be given "substantial or considerable weight" unless good cause is shown to not do so. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004) (quotations omitted); see 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). An examining physician's opinion is generally given more weight than that of a source who has not examined the claimant. 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1); Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B Nov. 12, 1981). The weight to be given a nonexamining physician's opinion depends, inter alia, on the extent to which it is supported by clinical findings and consistent with other evidence. See 20 C.F.R. § 404.1527(c)(3)–(4). The opinions of nonexamining, reviewing physicians are entitled to little weight and, "taken alone, do not constitute substantial evidence." Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (quotation omitted); Sharfarz, 825 F.2d at 280.

In order to show a disability based on testimony of pain or other symptoms, "the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined

11

medical condition can reasonably be expected to give rise" to the claimed symptoms.  Wilson, 284 F.3d at 1225.  Thus, the ALJ must determine: first, whether there is an underlying medically determinable impairment that could reasonably be expected to cause the claimant's pain or other symptoms; and second, the intensity and persistence of the symptoms and their effect on the claimant's work.  20 C.F.R. § 416.929(a), (c).

In weighing evidence, credibility determinations "are the province of the ALJ."  Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005).  However, if the ALJ discredits the claimant's subjective testimony, the ALJ "must articulate explicit and adequate reasons for doing so"; failure to do so "requires, as a matter of law, that the testimony be accepted as true."  Wilson, 284 F.3d at 1225.

Here, the ALJ found that Himes had the RFC to perform medium work "except the claimant has an occasional limitation for interaction with the general public and coping with work stress; but the claimant is capable of performing routine, predictable tasks in an air conditioned environment."  The ALJ determined that Himes's medically determinable impairments could reasonably be expected to cause Himes's alleged symptoms but did not explicitly state what these medically determinable impairments were, though it appears that the ALJ considered Himes's diagnoses of depression, anxiety, and personality disorder.  In so doing, the ALJ erred by not considering all of Himes's diagnoses: the ALJ did not list Dr. Richard

Brown's additional diagnostic impressions of social phobia, panic disorder, post-traumatic stress disorder ("PTSD"), attention deficit hyperactivity disorder ("ADHD") by history, and mild obsessive compulsive disorder ("OCD"), or Dr. Thomas DiGeronimo's assessment of OCD, or explain why these conditions were not, despite being diagnosed by examining physicians, "medically determinable" impairments.  See 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  Nevertheless, we conclude that this particular error is harmless, in the context of the pain standard, since the ALJ found that Himes's medically determinable impairments could reasonably be expected to cause his alleged symptoms.

Not all of the errors were harmless, however.  Our review of the record reveals no opinions by a treating physician, but includes four other medical opinions relevant to Himes's mental health: Dr. Brown's and Dr. DiGeronimo's opinions as examining physicians, and Dr. James Levassur's and Dr. Keith Bower's opinions as reviewing physicians.[2]  Yet the ALJ failed to state with particularity the weight he gave to each medical opinion -- he expressly said that he gave significant weight to the opinion of reviewing physician Dr. Levassur, but he did not expressly assign weight to the other three opinions.  As a result, we are unable to determine whether the ALJ's conclusions about the medical opinions are supported by substantial evidence.  See Winschel, 631 F.3d at 1179; Sharfarz, 825

---

[2]    As we've explained, the advanced registered nurse practitioner's opinion is not a medical opinion because she is not an acceptable medical source.

F.2d at 279.  The ALJ's statement that he carefully considered the entire record is not sufficient.  See Ryan, 762 F.2d at 942; Cowart, 662 F.2d at 735.

Of these omissions, the ALJ's failure to assign weight to Dr. Brown's opinion is most troublesome.  The ALJ discussed Dr. Brown's psychological report during previous sequential steps but did not assign it any weight, and the sole mention of Dr. Brown's opinion at the RFC stage was a reference to Himes's statement to Dr. Brown that he could prepare simple meals and perform household chores.  The ALJ did not mention Dr. Brown's diagnostic impressions of social phobia, panic disorder, PTSD, ADHD by history, major depression that was chronic and mild to moderate, mild OCD, and avoidant personality disorder, which are probative of Himes's claims about his impairments and symptoms.  The ALJ also did not discuss, inter alia, Dr. Brown's opinion that Himes seemed volatile and had physical manifestations of his frustrations when he was not understood, or Dr. Brown's opinion that Himes would need assistance managing his finances if he were granted disability.  Without an explanation from the ALJ as to the weight given to Dr. Brown's report, it is unclear whether the ALJ's ultimate decision is based on substantial evidence, and we must remand.  See Cowart, 662 F.2d at 735.

We also note that the ALJ mentioned Dr. DiGeronimo's neurological evaluation, but did not mention Dr. DiGeronimo's diagnoses of anxiety, depression, and OCD, and also did not explicitly assign his opinion any weight,

14

despite his status as an examining physician. Moreover, the ALJ's error in only assigning weight to Dr. Levassur's opinion is compounded because he was a nonexamining physician, as opposed to Dr. Brown and Dr. DiGeronimo, who were examining physicians. See Oldham, 660 F.2d at 1084. Thus, Dr. Levassur's opinion, taken alone, did not constitute substantial evidence in support of the ALJ's RFC assessment. See Broughton, 776 F.2d at 962.

The ALJ further erred in making the credibility determination that Himes was not credible to the extent that his statements about the intensity, persistency, and limiting effect of his symptoms were inconsistent with the RFC assessment. The ALJ gave the following reasons for his credibility determination: (1) Himes received unemployment benefits, and thus had represented that he was able to work; (2) there was no evidence that any of Himes's physical diagnoses caused any functional limitations; (3) despite diagnoses of depression, anxiety, and personality disorder, there was no evidence that these impairments prevented him from engaging in some type of work activity; and (4) the evidence showed that Himes had "more of a temper problem." But the ALJ's fourth reason for finding Himes not fully credible is not supported by the record and is otherwise insufficient. Himes consistently stated, to his medical care providers, to the Social Security Administration, and to the ALJ at his hearing, that his daughter was taken from him due to supposed neglect, but that in reality his daughter suffered from a

15

chromosomal defect that caused developmental delays.  The ALJ's statement that Himes lost custody of his daughter due to his temper, and then "had no problem controlling his temper" in order to regain custody of his daughter, appears to be the first mention of this scenario.  But beyond this unsupported statement of fact, the ALJ's conclusion that Himes really has "more of a temper problem" does not engage the physicians' opinions diagnosing Himes with mental impairments.  Himes's temper is not evidence about the limiting effects of his diagnosed mental impairments and does not indicate one way or the other whether his diagnoses and symptoms render him unable to work or are not limiting beyond the RFC assessment.  See, e.g., Lewis, 125 F.3d at 1440 (explaining that the RFC is an assessment of the claimant's ability to work despite his impairments).  Instead, the ALJ's stated reason for finding Himes less than fully credible is based on the ALJ's conjecture that Himes's problems are based on temper as opposed to mental issues.  This conclusion is thus not supported by substantial evidence in the record.  See Crawford, 363 F.3d at 1158.

Additionally, as we've explained, the ALJ omitted discussion of Himes's diagnosed mental illnesses besides depression, anxiety, and personality disorder, and did not determine whether these additional impairments such as social phobia, ADHD, and PTSD bore out Himes's alleged symptoms.  This error is not harmless in the context of Himes's credibility because, without considering all of Himes's

diagnosed impairments, the ALJ's conclusion that Himes's statements about his subjective symptoms are not credible to the extent they conflict with the RFC is not supported by substantial evidence. See id.; Lewis, 125 F.3d at 1440 (focusing on the claimant's ability to work despite his impairments).

Finally, the ALJ's RFC assessment is not supported by substantial evidence because, considering the ALJ's errors in failing to specify the weight given to medical opinions and in failing to make an adequately supported credibility determination, a reasonable person would not conclude that there is enough relevant evidence to support the conclusion that Himes is not entitled to benefits. Specifically, the ALJ's errors affected which diagnosed impairments were considered and the extent to which associated symptoms prevented Himes from working. Thus, the ALJ's conclusions at steps four and five in the sequential analysis are also not supported by substantial evidence.

Accordingly, we vacate and remand the district court's decision.[3]

**VACATED AND REMANDED.**

---

[3] We also GRANT Himes's motion to file a reply brief out of time.

17